# Shannon *v.* Philadelphia German Protestant Home for the Aged.

*Mechanics' liens — Subcontractors — Covenant against liens — Act of June 26, 1895, P. L. 369.*

The act of June 26, 1895, relating to mechanics' liens made no attempt to take away from the parties to the original contract the power to covenant that no lien should be filed for work done or materials furnished in the erection of a building. It merely regulated the manner in which the right of lien might be denied to subcontractors.

The legislative intent as disclosed by the act was to require that in order to exclude a subcontractor from the right of lien, that exclusion must necessarily result from the express covenants of the contract, and not from any principle or implication of law, limiting the rights of such subcontractors to those which might be asserted by the principal contractor.

The act clearly distinguishes between the claims of contractors and those of subcontractors, and, since it went into effect, a covenant by the contractor that he himself will not file a lien cannot be held specifically to covenant against liens by subcontractors.

*Mechanics' liens—Covenants against liens by subcontractors—Contract—*
*Act of June 26, 1895, P. L. 369.*

In order to warrant the court in holding that a covenant for liens in a
building contract applies to subcontractors, it must so clearly appear that
the covenant was intended to deny the right of lien to subcontractors that
a mechanic or material man could have understood it without consulting
a lawyer as to its legal effect.

A building contract provided as follows: " The contractor agrees not to
lien or allow any lien or claim whatsoever to be filed against said building
by himself, subcontractors or any one furnishing materials or labor on
said building," Another clause was as follows: "If at any time there
shall be evidence of any lien or claim for which, if established, the owner
or the said premises might become liable, and which is chargeable to the
contractor, the owner shall have the right to retain out of any payment
then due or thereafter to become due an amount sufficient to completely
indemnify him against such lien or claim. Should there prove to be any
such claim after all payments are made, the contractor shall refund to the
owner all moneys that the latter may be compelled to pay in discharging
any lien on said premises made obligatory in consequence of the contractor's
default." *Held*, that the contract did not specifically covenant against
liens by a subcontractor, and that the act of June 26, 1895, saved the right
of such subcontractor to a lien from the operation of the limited covenants
contained in the agreement.

Argued Oct. 19, 1900.   Appeal, No. 137, Oct. T., 1900, by
plaintiffs, from order of C. P. No. 4, Phila. Co., March T., 1900,
No. 79, M. L. D., discharging rule for judgment for want of a
sufficient affidavit of defense in case of Alfred P. Shannon and
Edwin H. Shannon, trading as J. B. Shannon & Sons, v. Phila-
delphia German Protestant Home for the Aged, owner or re-
puted owner, and J. V. Bennett and S. W. Rothrock, trading
as Bennett & Rothrock, Contractors.   Before RICE, P. J.,
BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.
Reversed.

Scire facias sur mechanics' liens.

Rule for judgment for want of a sufficient affidavit of defense.

From the record it appeared that the lien was filed by mate-
rial men who had furnished material to Bennett & Rothrock,
contractors, for the building of the Philadelphia German Pro-
testant Home for the Aged.   The defendant claimed that the
subcontractor had no right to file a lien.   The material portions
of the contract between the Philadelphia German Protestant
Home for the Aged and Bennett & Rothrock were as follows:

" The contractor agrees not to lien or allow any lien or claim whatsoever to be filed against said building by himself, subcontractor, or any one furnishing materials or labor on said building.

" If at any time there shall be evidence of any lien or claim for which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify him against such lien or claim.  Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

The court discharged the rule for judgment for want of a sufficient affidavit of defense.

*Error assigned* was the order of the court.

*Joseph H. Taulane,* for appellants.—When the contract does not contain an express stipulation against liens by subcontractors, the Supreme Court have always held that the addition of this provision is most persuasive proof that the parties did not intend to prohibit subcontractors from liening: Creswell Iron Works v. O'Brien, 156 Pa. 172; Lucas v. O'Brien, 159 Pa. 535.

It is confidently submitted that the stipulation in the case at bar is a mere personal covenant on the part of the contractor that he would not allow the subcontractors to lien, and that it in no way deprives the plaintiffs of their right to lien: Gordon v. Norton, 186 Pa. 168 ; Hazleton Plumbing Co. v. Powell, 13 Pa. Superior Ct. 426 ; Nice v. Walker, 153 Pa. 123; Creswell Iron Works v. O'Brien, 156 Pa. 172 ; Lucas v. O'Brien, 159 Pa. 535 ; Sullivan v. Hancock, 2 Pa. Superior Ct. 525.

*Dimner Beeber,* with him *Hampton L. Carson* and *J. Levering Jones,* for appellees.—There being a stipulation against liens by the contractor, it is binding upon all persons who have to claim through or under him : Gordon v. Norton, 186 Pa. 168 ; Long v. Caffrey, 93 Pa. 526 ; Scheid v. Rapp, 121 Pa. 593 ; Ballman v. Heron, 160 Pa. 377 ; Waters v. Wolf, 162 Pa.

153; Fidelity Mut. Life Assn. v. Jackson, 163 Pa. 208; Morris v. Ross, 184 Pa. 241; Commonwealth Title, Ins. & Trust Co. v. Ellis, 192 Pa. 321.

OPINION BY W. D. PORTER, J., February 14, 1901:

It had been repeatedly decided prior to the year 1895 that where a building contract contained an express covenant against liens, or such a covenant clearly appeared as a necessary implication from the language employed, that subcontractors and material men were bound by the covenants of the original contractor. The power of the legislature to deprive the parties of freedom to make contracts of this character, or to relieve a subcontractor from the consequences thereof, unless he consented thereto, was expressly denied in Waters v. Wolf, 162 Pa. 153. In the opinion in that case, however, Mr. Justice DEAN, who spoke for the majority of the court, said: "Whatever reasonable regulations the legislature might make, as to notice to subcontractors and material men, of the terms of a contract between the owner and the only one with whom he bargains, the principal contractor, such as, that it shall be in writing and shall be recorded, would be clearly within the legislative power." The case of Ballman v. Heron, 160 Pa. 377, was decided in 1894, and in that case the covenant against liens was in these words: "And it is further agreed that the said Patrick Heron, of the first part, agrees to file no liens against the same said houses, and will pay all bills for work done and materials furnished for the erection of the same said buildings, and will deliver the same said buildings over to Isabella Heron, free of all charges for work done or materials furnished, on receiving the last payment." It was there held that if the contractor was unable, by reason of his contract, to file a lien in any given case, the subcontractor was, for the same reason, unable to sustain a lien in the same case. The principle established by the decisions was that the right to the lien was derived from the contract, and that he who acquired rights under the contract of another acquired no greater rights than were possessed by that person under whom the claim was acquired. If the principal contractor had covenanted that he himself would not file a lien, no lien could, in such a case, be sustained by a subcontractor. Such were the conditions when

the Act of June 26, 1895, P. L. 369, became a law. This legislation made no attempt to take away from the parties to the original contract the power to covenant that no lien should be filed for work done or materials furnished in the erection of a building. It was such a regulation of the manner in which the right of lien might be denied to subcontractors as was suggested in the opinion in Waters v. Wolf. The subject-matter of the legislation was contracts "for the erection of the whole or any part of any building hereafter made, . . . . whereby it is sought to deprive or hinder a contractor, subcontractor, material man, or other person, from filing or maintaining a lien, for work done or material furnished to such building;" but the rights of the principal contractor are not in any manner affected by this legislation, and remain what they formerly were. The contracts with which the legislature was dealing were those in which it was sought to deprive or hinder a contractor, subcontractor, material man, or other person, from filing or maintaining a lien; but when it comes to the enumeration of the rights which are to be affected by this legislation, we find that those of the contractor are omitted, and it is only those of the subcontractor, material man, or other person, which come within its protection. The result is that no such contract "shall operate to defeat the right of any subcontractor, material man, or other person, to file and maintain such a lien, unless such contract or stipulation shall specifically covenant against such lien by subcontractor, or other person, and unless such stipulation shall be in writing and signed by the parties thereto." The second section provides that the contract or stipulation shall be filed with the prothonotary. The act provides that there shall be a specific covenant against liens by subcontractors, but it does not provide, and manifestly did not intend to do so, any particular form for such covenant. It is clear that the legislative intent here sought to be accomplished was to require that in order to exclude a subcontractor from the right of lien, that exclusion must necessarily result from the express covenants of the contract, and not from any principle or implication of law, limiting the rights of such subcontractor to those which might be asserted by the principal contractor. A general covenant that no lien should be filed against a building, for any work

done or material furnished in the erection thereof, would include within its terms all who might otherwise have the right of lien. A covenant limited to any class of work or material, as bricks or brickwork, would be effective only as to that particular class. A covenant in any manner limited could not, in the face of this act, be enlarged to embrace matters not within the limitation. The act clearly distinguishes between the claims of contractors and those of subcontractors, and, since it became a law, a covenant by the contractor that he himself will not file a lien cannot be held to specifically covenant against liens by subcontractors. If the statute is not to be given this effect, then its provisions with regard to the substance of the contract mean nothing.

Do the express covenants of the contract with which we are now dealing stipulate that no subcontractor shall file a lien for work done or material furnished to the building which was the subject-matter of the contract? In order to warrant us in holding that they do, it must so clearly appear that it was intended to deny the right of lien to subcontractors, that a mechanic or material man could have understood it without consulting a lawyer as to its legal effect: Nice v. Walker, 153 Pa. 123. Covenants which can, since the act of 1895, be held to deny the right of lien to a subcontractor must be as explicit as those which, prior to that legislation, were sufficient to defeat the right of the principal contractor. We find in article 9 of this contract this covenant, to wit: "If at any time there shall be evidence of any lien or claim for which, if established, the owner or the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify himself against such lien or claim. Should there prove to be any claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default." Here was an express recognition of the fact that under the terms of the contract the building might become liable to the lien of claims, for which the principal contractor was chargeable. The only other covenant in the contract relating to liens is found in the concluding para-

graph of article 11 : " The contractor agrees not to lien or allow any lien or claim whatsoever to be filed against said building by himself, subcontractors, or any one furnishing materials or labor on said building." The meaning of this covenant is, that the contractor will not himself file a lien, nor will he allow any lien or claim whatsoever to be filed against said building by subcontractors. Here was an absolute covenant that the principal contractor would not file a lien for his own claim, and this covenant was not affected by the above recited provisions of article 9; so that all right of lien in the principal contractor was gone : Morris v. Ross, 184 Pa. 241 ; Commonwealth Title, Ins. & Trust Company v. Ellis, 192 Pa. 321. The stipulation with regard to liens by subcontractors is in a different form. The covenant is, that the contractor will not allow any lien or claim whatsoever to be filed against said building by subcontractors, or any one furnishing materials or labor to said building. This was not an absolute covenant that no subcontractor should file a lien, and it is to be construed in connection with article 9 of the contract. The fair construction of this provision of the agreement is that it was intended to protect the owner; not by an absolute prohibition of liens by subcontractors, but by providing for their payment by the principal contractor, and, in default of his doing so, the owner was given the right to protect himself by the retention of payments due to the principal contractor, or, upon discovery of a lien after a final settlement, calling upon the contractor to refund : Hazleton Plumbing Company v. Powell, 13 Pa. Superior Ct. 426 ; Lloyd v. Krause, 147 Pa. 402 ; Creswell Iron Works v. O'Brien, 156 Pa. 172 ; Lucas v. O'Brien, 159 Pa. 535 ; Gordon v. Norton, 186 Pa. 168.

We must conclude that this contract did not specifically covenant against liens by subcontractors, and that the act of 1895 saves the right of such subcontractors to a lien from the operation of the limited covenants contained in the agreement. The refusal of the learned court below to enter judgment for want of a sufficient affidavit of defense was, therefore, erroneous.

Judgment reversed and record remitted to the court below, with direction to enter judgment against the defendant for such sum as to right and justice may belong, unless other legal or equitable cause be shown to the court below why such judgment should not be entered.