Randolph D. DAHL Sr. and Mary
K. Dahl, Appellants,

v.

AMERIQUEST MORTGAGE COMPA-
NY, National Real Estate Information
Services and Insurance Solutions Con-
cept, Inc., Appellees.

Superior Court of Pennsylvania.

Argued May 21, 2008.

Filed July 1, 2008.

Kevin M. Miller, Pittsburgh, for appellants.

Sandhya M. Feltes, Blue Bell, for Ameriquest, appellee.

Thomas K. Lammert, Jr., Pittsburgh, for National Real Estate, appellee.

BEFORE: MUSMANNO, POPOVICH and HUDOCK, JJ.

OPINION BY HUDOCK, J.:

¶ 1 This is an appeal from the trial court's final judgment entered in this case. We affirm.

¶ 2 This case involves Real Estate Settlement Procedures Act (RESPA)[1] claims brought by Randolph D. Dahl, Sr., and Mary K. Dahl (the Dahls) against Ameriquest Mortgage Company (Ameriquest) and National Real Estate Information Services (NREIS). The Dahls claim that Ameriquest and NREIS failed to secure hazard insurance on the Dahls' property upon the refinancing of a mortgage. The trial court aptly summarized the pertinent facts as follows:

> On September 13, 1999, [the Dahls and Ameriquest] entered into a Mortgage Agreement whereby [Ameriquest] was to provide refinancing for [the Dahls'] property. Thereafter, on September 17, 1999, [Ameriquest] loaned [the Dahls] $56,250.00 secured by a mortgage on [the Dahls'] home. The Complaint alleges that [NREIS] was hired by [Ameriquest] to be the closing and escrow agent on behalf of [Ameriquest] in order to receive and distribute the mortgage

---

1. 12 U.S.C.S. §§ 2601–2617.

proceeds, including the purchase of hazard insurance. Pursuant to the Settlement Statement, the amount of $52,157.42 was wired to [NREIS] from [Ameriquest] with directed disbursements. One disbursement directed was to purchase hazard insurance from Comprehensive Insurance Services (hereinafter "CIS"). The Complaint asserts that the insurance was never purchased. On July 31, 2000, [the Dahls'] home suffered damage from a windstorm for which [the Dahls] made an insurance claim. In 2001, Ocwen Federal Bank purchased the loan from [Ameriquest] and discovered that an insurance policy had never been issued. Upon learning this information, Ocwen purchased and issued a retroactive policy on [the Dahls'] property, covering the property from the date of closing forward. An appraiser was sent to investigate the damage to [the Dahls'] property due to the windstorm. Damages were determined to be $9,914.66.[2]

Trial Court Opinion, 9/5/06, at 2–3.[3]

¶ 3 On September 13, 2001, the Dahls filed a writ of summons and initiated a lawsuit against Ameriquest, NREIS and Insurance Solutions Concept, Inc.[4] On June 10, 2003, the Dahls filed a complaint against Ameriquest, NREIS and Insurance Solutions Concept, Inc., alleging breach of contract and violations of RESPA. On July 27, 2005, in response to Ameriquest's motion for summary judgment, the trial court dismissed the Dahls' claims for emotional distress damages against Ameriquest, but denied the motion with regard to the breach of contract and RESPA claims. On May 19, 2006, NREIS filed a motion for summary judgment on the Dahls' RESPA claims. On May 24, 2006, Ameriquest filed a motion to reconsider the trial court's order entered July 27, 2005, which motion sought summary judgment and dismissal of the RESPA claims against Ameriquest. On September 5, 2006, following oral argument, the trial court entered an order granting NREIS' motion for summary judgment and Ameriquest's motion for reconsideration and dismissing the Dahls' RESPA claims against both Ameriquest and NREIS. The trial court found that the Dahls did not plead facts or produce evidence to establish that NREIS was a "servicer" responsible for servicing a loan under RESPA, or that Ameriquest established an escrow account under RESPA. Trial Court Opinion, 9/5/06, at 8, 9–10. Therefore, the trial court held that the Dahls did not establish a cause of action under RESPA against either party.

---

**2.** NREIS stated in its appellate brief that an insurance carrier compensated the Dahls $9,914.66 for the storm damage. NREIS' Brief, at 6. In support of that assertion, NREIS referenced a copy of a check issued on July 6, 2001, by Fidelity and Deposit Company of Maryland, made payable to Ocwen Federal Bank and the Dahls, in the amount of $9,914.66. A copy of the check was attached as Exhibit E to Ameriquest's memorandum in support of its motion for summary judgment. The Dahls do not refute NREIS' assertion regarding the payment. In their appellate brief, however, the Dahls argue that the insurance policy placed by Ocwen did not adequately protect their interests. The Dahls' Brief, at 8.

**3.** The trial court opinion, pursuant to Rule of Appellate Procedure 1925(a), filed August 14, 2007, refers this Court to its September 5, 2006, memorandum opinion to support its decision to dismiss the Dahls' RESPA claims. All references to "trial court opinion" will be to the September 5, 2006, memorandum opinion.

**4.** Although Insurance Solutions Concept, Inc., is listed in the case caption, that defendant is no longer a party in this proceeding (in accordance with the order of the trial court, dated September 20, 2006).

¶ 4 On September 20, 2006, the trial court referred the Dahls' remaining claims against Ameriquest and NREIS to compulsory arbitration pursuant to Pennsylvania Rule of Civil Procedure 1301. On December 15, 2006, an arbitration panel awarded the Dahls damages of $2,501.39 to be paid by Ameriquest and NREIS jointly and severally. On February 12, 2007, the Dahls (hereafter Appellants) filed a notice of appeal of the trial court's order entered September 5, 2006, which dismissed the RESPA claims against Ameriquest and NREIS. Upon Ameriquest and NREIS' (collectively Appellees) motion, that appeal was quashed by this Court on June 15, 2007, because no final judgment on the arbitration award was entered by the trial court. Order, 6/15/07 (No. 793 WDA 2007).

¶ 5 Following Appellants' praecipe to enter judgment, the trial court entered judgment on the arbitration award on June 25, 2007. On July 17, 2007, Appellants filed a notice of appeal from the judgment on the arbitration award and the September 5, 2006, order dismissing Appellants' RESPA claims. On August 1, 2007, the trial court entered an order requiring Appellants to file a concise statement of matters complained of on appeal pursuant to Rule of Appellate Procedure 1925(b), and Appellants timely complied. On October 4, 2007, this Court denied Ameriquest's motion to quash the appeal "without prejudice to the moving party's right to again raise the issue(s) presented by the motion before the merits panel." Order, 10/4/07 (No. 1333 WDA 2007). Appellants raise the following issues on appeal:

1. Did the Trial Court err in dismissing [Appellants'] RESPA claim against [Ameriquest] by determining as a matter of law that the settlement escrow account created to make payment of hazard insurance on [Appellants'] property was not covered by RESPA?

2. Did the Trial Court err in dismissing [Appellants'] RESPA claim against [NREIS] by determining as a matter of law that NREIS was not a "servicer" of the mortgage as defined by RESPA?

Appellants' Brief, at 4.

¶ 6 Before addressing Appellants' claims, however, we must first consider Appellees' arguments regarding this Court's jurisdiction to hear this appeal. Appellees argue that this Court is without jurisdiction to hear the appeal because Appellants violated Pennsylvania Rule of Civil Procedure 1308(a) by appealing directly to this Court from an arbitration award.[5] Specifically, Appellees argue that under Rule 1308(a), the appeal should have been filed with the prothonotary of the trial court within thirty days of the entry of the arbitration award on December 15, 2006. Second, Appellees argue that the appeal violates Pennsylvania Rule of Appellate Procedure 903(a), which requires that notice of appeal be filed within thirty days after the entry of the order from which the appeal is taken. Appellees argue that the final order for appeal purposes was the arbitration award, that it was entered on December 15, 2006, and that, therefore, Appellants' notice of appeal filed July 17, 2007, is untimely.

¶ 7 Appellees' claims that this appeal is untimely or that this Court otherwise lacks

---

5. Rule 1308(a) provides that an appeal of an arbitration award should be taken by filing a *notice of appeal (in the form provided by Rule 1313)* with the prothonotary of the court in which the action is pending, and that the notice should be filed no later than thirty days after the prothonotary makes the notation on the docket that notice of entry of the arbitration award has been provided. Pa.R.C.P. 1308(a).

jurisdiction to hear it are without merit. On February 12, 2007, Appellants filed a notice of appeal of the trial court's order entered September 5, 2006. On June 15, 2007, this Court granted Appellees' motion to quash Appellants' appeal, stating that its order was without prejudice to the parties' right to file a perfected appeal following entry of judgment on the arbitration award. Order, 6/15/07 (No. 793 WDA 2007). In its order quashing the appeal, this Court cited *Seay v. Prudential Property and Casualty Insurance Company,* 375 Pa.Super. 37, 543 A.2d 1166 (1988). The *Seay* Court held that an appeal taken after common law arbitration is proper only after confirmation of the award and entry of judgment. *Seay,* 543 A.2d at 1168. In *Niemiec v. Allstate Insurance Company,* 721 A.2d 807 (Pa.Super.1998), this Court held that where a trial court's order is a "hybrid"—dismissing one count in a complaint and referring remaining counts to arbitration—the dismissal order is not yet final and appealable because it fails to dispose of all claims and all parties. *Niemiec,* 721 A.2d at 810. Upon conclusion of the arbitration proceedings, the dismissal order becomes final and may be appealed. *Id.* Therefore, "review is not forbidden, it is merely postponed." *Id.*

¶ 8 Following Appellants' praecipe to enter judgment, the trial court entered judgment on the arbitration award on June 25, 2007. On July 17, 2007, Appellants filed a notice of appeal from the judgment on the arbitration award and the September 5, 2006, order dismissing Appellants' RESPA claims.[6] Thus, in accordance with the Su-

perior Court's June 15, 2007, order, Appellants properly waited to challenge the September 5, 2006, order until it became a final appealable order. *Seay,* 543 A.2d at 1168. That occurred on June 25, 2007, upon the trial court's entry of judgment on the arbitration. *Id.; Niemiec,* 721 A.2d at 810. Because Appellants filed a notice of appeal within thirty days of the entry of judgment on the arbitration award—which disposed of all remaining claims in Appellants' complaint—the appeal is timely, and this Court has jurisdiction to consider it. *Seay,* 543 A.2d at 1168; *Niemiec,* 721 A.2d at 810.

■■ ¶ 9 Appellees also argue that Appellants' failure to file a post-trial motion under Pennsylvania Rule of Civil Procedure 227.1(c)(2) waives all issues on appeal.[7] Rule 227.1(c) provides that:

(c) Post-trial motions shall be filed within ten days after

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the filing of the decision in the case of a trial without jury.

Pa.R.C.P. 227.1(c). However, in this case, there was no trial on the merits of the RESPA claims. Appellants challenge the trial court's dismissal of their RESPA claims against Appellees; Appellants do not make claims involving issues raised during a trial or which must be presented to the trial court through post-trial motions in order to be preserved. *DiGrego-*

---

6. We note that, although Appellants in their July 17, 2007, notice appeal from both the judgment of arbitration entered on June 25, 2007, and the trial court's September 5, 2006, order, Appellants' Rule 1925(b) statement and their appellate brief make clear that Appellants limit their claims to the trial court's September 5, 2006, order dismissing the RESPA claims against Appellees.

7. Ameriquest made the same argument in its August 13, 2007, motion to quash the appeal, which the Superior Court denied "without prejudice to the moving party's right to again raise the issue(s) presented by the motion before the merits panel." Order, 10/4/07 (No. 1333 WDA 2007).

*rio v. Keystone Health Plan East*, 840 A.2d 361, 365 (Pa.Super.2003) (holding that a motion for post-trial relief "may not be filed pursuant to an order disposing of a motion for summary judgment or other motion relating to a proceeding other than trial"). Thus, Appellants have not waived their RESPA claims by failing to file a post-trial motion. Therefore, Ameriquest's motion to quash is denied.

¶ 10 We now consider Appellants' claims that the trial court erred in granting summary judgment and dismissing Appellants' RESPA claims against Appellees. Our review of an appeal from the grant of a motion for summary judgment is well settled. A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *Erie Insurance Exchange v. Weryha*, 931 A.2d 739, 741 (Pa.Super.2007). Similarly, the standard of review of a motion for reconsideration is limited to whether the trial court manifestly abused its discretion or committed an error of law. *Koresko & Associates, P.C. v. Farley*, 826 A.2d 6, 7 (Pa.Super.2003). As this Court stated in *Drelles v. Manufacturers Life Insurance Company*, 881 A.2d 822 (Pa.Super.2005):

> An abuse of discretion or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused. The issue of whether there are genuine issues as to any material fact presents a question of law, in which case our standard of review is *de novo*.

*Drelles*, 881 A.2d at 830–31 (citations omitted). In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule, Pennsylvania Rule of Civil Procedure 1035.2:

> The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof ... establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Murphy v. Duquesne University of the Holy Ghost*, 565 Pa. 571, 777 A.2d 418, 429 (2001) (citations and quotation marks omitted).

¶ 11 In this case, Appellants argue that the trial court erred by determining that they did not establish a cause of action against Appellees under RESPA. Specifically, the trial court determined that NREIS was not a "servicer" under RESPA and that Ameriquest did not establish an escrow account that made it liable under RESPA. Thus, Appellants' claims concern the proper interpretation of RESPA. As the claims present questions of statutory interpretation, purely legal issues, an appellate court's standard of review is plenary and non-deferential. *See In re Carroll*, 586 Pa. 624, 896 A.2d 566, 573 (2006). In a case involving statutory interpretation, this Court has held that:

> The objective of statutory interpretation and construction is to ascertain and effectuate the intention of the legislature. 1 Pa.C.S.A. § 1921(a). "Where

the intent of the legislature is clear from the plain meaning of the statute, there is no need to pursue statutory construction." *Commonwealth v. Alexander*, 811 A.2d 1064, 1066 (Pa.Super.2002), *appeal denied*, 573 Pa. 676, 822 A.2d 703 (2003) (citing *Commonwealth v. Packer*, 568 Pa. 481, 488–89, 798 A.2d 192, 196 (Pa. 2002)). "Only when the language of the statute is ambiguous does statutory construction become necessary." *Id.* When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S.A. § 1921(a).

*Commonwealth v. Menezes*, 871 A.2d 204, 209 (Pa.Super.2005) (emendations omitted). Only when the words of the statute are not explicit should a reviewing court resort to other considerations to determine legislative intent. 1 Pa.C.S.A. § 1921(b). Moreover,

[w]here the general provisions of one statute conflict with the specific provisions of another statute, the two statutes must be construed to give effect to both unless the conflict is irreconcilable, in which case specific provisions govern general provisions as long as the general provisions were not enacted after the specific provisions and the General Assembly did not clearly indicate that the general provisions be given priority over the specific provisions.

*Menezes*, 871 A.2d at 209 (citations omitted). Federal courts have similarly held that "[w]hen a statute speaks with clarity to an issue[,] judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *Katz v.* *The Dime Savings Bank FSB*, 992 F.Supp. 250, 256–57 (W.D.N.Y.1997) (citing *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992)). *See also United States v. Cooper*, 396 F.3d 308, 310 (3rd Cir.2005) (holding that the first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case; where the language of the statute is clear, "the text of the statute is the end of the matter").

¶ 12 We now consider Appellants' claim that the trial court erred when it determined as a matter of law that NREIS was not a "servicer" of the mortgage as defined by RESPA and that Appellants did not establish a cause of action against NREIS under RESPA.[8] 12 U.S.C. section 2605(g), upon which Appellants base their claims, provides:

(g) Administration of Escrow Accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

12 U.S.C. § 2605(g). RESPA defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C.

---

**8.** Because Appellants allege liability against both Appellees under section 2605(g), we also consider whether Ameriquest was a "servicer" and therefore liable under that section. Appellants allege that both Appellees were "servicers" and violated section 2605(g), relating to the obligations of "servicers." Complaint, 6/10/03, at ¶ 9; Appellants' Brief, at 18.

§ 2605(i)(2). "Servicing" is defined by the Act as follows:

The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

¶ 13 In this case, Appellants failed to establish that either Appellee was a "servicer" under RESPA and, therefore, liable under section 2605(g). *See Madera v. Ameriquest Mortgage Company,* 363 B.R. 718, 731 (Bankr.E.D.Pa.2007) (holding that summary judgment is appropriate on a RESPA claim because, in that case, Ameriquest was not a loan servicer subject to suit under RESPA; section 2605 of RESPA applies only to loan servicers and lenders acting as servicers). In September 1999, pursuant to the closing of a mortgage on Appellants' property, Ameriquest wired to NREIS a disbursement of money from which NREIS was to pay $336.00 to an insurance company for hazard insurance. Complaint, 6/10/03, Exhibit A. NREIS' role was to receive and disburse mortgage proceeds. Complaint, 6/10/03, ¶ 8. According to Appellants' complaint,

[a]t the mortgage closing on or about September 13, 1999, the sum of three hundred thirty six dollars ($336.00) was placed in the closing escrow account at the direction of Ameriquest and the Dahls. The closing document contained directions that the sum of $336.00 was to be paid to [Comprehensive Insurance Services], who would in turn secure a homeowners casualty insurance policy on the premises to be mortgaged, an

insisted upon requirement of Ameriquest.

Complaint, 6/10/03, at ¶ 12.

¶ 14 There is no assertion in the pleadings or facts in the record that NREIS or Ameriquest received or were scheduled to receive "periodic" or reoccurring payments from Appellants for the payment of hazard insurance—or for any other purpose. Although Appellants argue that NREIS and Ameriquest were servicers of their loan, under the Act "servicing" is clearly defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." 12 U.S.C. § 2605(i)(3). As the trial court stated, Webster's New World College Dictionary defines "periodic" as: "1. occurring, appearing, or reoccurring at regular intervals[;] 2. occurring from time to time; intermittent[;] 3. of or characterized by periods[;] 4. of, characterized by, or expressed in periodic sentences[.]" Trial Court Opinion, 9/6/06, at 7 (citing Webster's New World College Dictionary (4th ed.2001)). Neither Ameriquest nor NREIS was a "servicer" because neither received periodic payments from Appellants under the terms of the loan. *See Madera,* 363 B.R. at 731 (defining "servicer" as "the person responsible for servicing [i.e., receiving the scheduled periodic payments] of a loan (including the person who makes or holds a loan if such person also services the loan). 12 U.S.C. § 2605(i)(2)-(3).").

¶ 15 As the trial court pointed out, the transaction in this case can be considered a closing or "settlement." RESPA defines "settlement services" as including "the handling of the processing, and closing or settlement." 12 U.S.C. § 2502(iii)(3). The charges at issue, identified in the settlement statement attached to Appellants' complaint, are labeled "settlement charges" and were one-time payments pursuant to the closing. Complaint,

6/10/03, at Exhibit A. NREIS' disbursement of one payment for hazard insurance under the circumstances in this case does not constitute "servicing" under the plain language of the statute. Because neither Ameriquest nor NREIS were loan servicers subject to suit under RESPA, summary judgment was appropriate on Appellants' RESPA claims.

¶ 16 Appellants argue that, although NREIS was responsible for disbursing only one payment to secure hazard insurance, the payment was "periodic" because Appellants were to make direct annual payments thereafter. Appellants' Brief, at 24. That argument, however, defies the plain meaning of the statutory language. "Periodic," as the trial court pointed out, means occurring, appearing or reoccurring at regular intervals. Webster's New World College Dictionary (4th ed.2001). "Servicing" under 12 U.S.C. section 2605(i)(2) is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 10, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." A onetime payment for hazard insurance from the disbursement of loan proceeds does not constitute "servicing" under the plain language of the statute. 12 U.S.C. § 2605(i)(2).

¶ 17 Appellants also argue that RESPA is a consumer protection statute that should be construed liberally to best serve Congressional intent and that the trial court erred when it narrowly construed the terms of the Act, such as "periodic." Appellants' Brief, at 12, 16. However, as discussed above, the trial court interpreted the term "periodic" according to its plain meaning—whereby "periodic payments" means more than one payment. Appellants point to no cases which support their interpretation of the term "periodic" or that support their argument that Appellees were loan servicers liable under RESPA.

¶ 18 We now consider Appellants' final claim on appeal: whether the trial court erred by granting summary judgment and dismissing their RESPA claim against Ameriquest based on its finding that the settlement escrow account was not covered by RESPA.[9] In order to establish a cause of action under section 2605(g) of RESPA, Appellants have to establish that Ameriquest was a servicer of the loan and that the settlement escrow account was an "escrow account" under the Act. First, as discussed above, Ameriquest was not a "servicer" under RESPA. Second, Appellants did not demonstrate that Ameriquest established or administered an escrow account under RESPA. Section 2605(g) provides:

(g) Administration of Escrow Accounts

If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due.

9. Appellants concede that NREIS created the escrow account at issue in this case, but argue that Ameriquest is liable under 12 U.S.C. section 2605(g) because NREIS was acting on Ameriquest's behalf. Appellants' Brief, at 19.

12 U.S.C. § 2605(g). Escrow accounts are defined in the federal regulations interpreting the Act as follows:

> Escrow account means any account that a servicer establishes or controls on behalf of a borrower to pay taxes, insurance premiums (including flood insurance), or other charges with respect to a federally related mortgage loan, including charges that the borrower and servicer have voluntarily agreed that the servicer should collect and pay. The definition encompasses any account established for this purpose, including a "trust account," "reserve account," "impound account," or other term in different localities. An "escrow account" includes any arrangement where the servicer adds a portion of the borrower's payments to principal and subsequently deducts from principal the disbursements for escrow account items. For purposes of this section, the term "escrow account" excludes any account that is under the borrower's total control.

24 C.F.R. § 3500.17(b). Thus, an escrow account under section 2605(g) is an account consisting of payments made by a borrower, used by a loan servicer to make payments for taxes, insurance premiums, and other charges as such payments become due.

¶ 19 In this case, Appellants' loan did not require them to make payments into the settlement escrow account. Appellants do not argue that either Appellee was to collect sums from Appellants for payments of principal, interest, taxes, insurance and other items or that Appellees were to make such future payments. Such would be required under section 2605(g) (requiring the "borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property," and the servicer to "make payments from the escrow account for such taxes, insurance premiums, and other charges ... "). The payment of taxes and insurance in this case was incidental to closing the loan and disbursing the loan proceeds, not to the ongoing servicing of the loan between the lender and borrower. Thus, NREIS' settlement escrow account used to disburse the loan proceeds is not an escrow account under 12 U.S.C. section 2605(g).

¶ 20 Motion to quash denied. Judgment affirmed.