## Brubacher Excavating Inc. v. Commerce Bank/Harrisburg N.A.

*Jonathan H. Rudd,* for plaintiff.

*Thomas O. Williams* and *Matthew E. Hamlin,* for defendant.

ASHWORTH, *J.,* December 22, 2008—This matter is before the court on cross motions for summary judgment. For the reasons set forth below, summary judgment will be entered in favor of Brubacher Excavating Inc., and against Commerce Bank/Harrisburg N.A.

## I. BACKGROUND

The facts of this case are undisputed.[1] This action arises out of the construction of a branch bank of Commerce Bank/Harrisburg N.A. located at 1461 Manheim Pike, Lancaster, Pennsylvania (the property). Manheim Equities is the owner-in-fee of the property, and Commerce Bank is the tenant. Manheim Equities, as lessor, assigned its interest in the lease to Liberty Bank.

On September 6, 2006, Commerce Bank entered into a written contract with Premier Construction Inc. to construct the branch bank. Prior to permission or authority being given by Manheim Equities or Commerce Bank to Premier for the commencement of work on the project, Commerce Bank caused to be filed in the prothonotary's office of the Court of Common Pleas of Lancaster County on October 3, 2006, a stipulation against liens which was dated September 29, 2006. The stipulation against liens was filed to docket no. CI-06-09679 and was in conformance with all requirements of the Mechan-

---

1. All material facts are set forth in the joint stipulation of facts prepared by the parties in June 2008 and attached to Commerce Bank's motion for summary judgment as exhibit "1".

ics' Lien Law then in effect. Accordingly, as of October 3, 2006, this stipulation could have been reviewed by any and all subcontractors and sub-subcontractors who were to perform work on the property.

On November 3, 2006, Premier entered into a subcontract with McElroy Contractors LLC, whereby McElroy was to perform certain site work at the property for an estimated $116,815. McElroy in turn subcontracted a portion of its work to Brubacher Excavating Inc., on or about April 27, 2007, to perform asphalt paving on the project at a bid price of $45,689.

Brubacher completed asphalt paving on the property on or about May 21, 2007, and invoiced McElroy in the amount of $42,976.45, which represented the cost of labor and materials.[2] McElroy has not paid any amount to Brubacher for its work on the project. McElroy was required to pay Brubacher within 30 days of its invoice dated May 21, 2007, or by June 20, 2007. Premier has paid McElroy for all amounts due and owing under its subcontract with McElroy except for $20,224.31 that it is still retaining from McElroy.

On or about August 27, 2007, Brubacher notified Commerce Bank and Premier in writing that it intended to file a mechanics' lien on the project. Brubacher filed its mechanics' lien claim on October 19, 2007, and subsequently filed a complaint in action upon the mechanics' lien claim on November 14, 2007. Commerce Bank filed

---

2. Brubacher's invoice of May 21, 2007 was for less than the subcontract amount as a result of certain adjustments in the quantity of materials and services actually performed.

preliminary objections on December 4, 2007, which were overruled by order of this court dated February 4, 2008. Commerce Bank then filed an answer with new matter on February 21, 2008, to which Brubacher filed a reply on February 26, 2008.

A petition to discharge the mechanics' lien on deposit of security pursuant to 49 P.S. §1510 was filed by Commerce Bank on April 14, 2008. A rule was entered upon Brubacher on April 28, 2008, to show cause why Commerce Bank was not entitled to the relief requested in its petition. Ultimately, an order was entered on July 10, 2008, granting the petition to discharge and directing the prothonotary, upon defendant's depositing of the surety bond attached to the petition as exhibit "A", to discharge plaintiff's mechanics' lien claim filed in the office of the prothonotary. The bond to discharge existing lien was filed on July 11, 2008

Meanwhile, the case was certified as ready for trial and a pretrial conference was held on June 5, 2008, during which the parties agreed that a trial was unnecessary and that this matter could be disposed of on cross-motions for summary judgment. The parties further agreed to enter into stipulations of fact prior to the filing of the cross-motions for summary judgment by the parties. Commerce Bank's motion and brief in support thereof were filed on July 25, 2008. Brubacher filed its cross-motion for summary judgment and brief in opposition to Commerce Bank's motion for summary judgment and in support of its motion for summary judgment on September 5, 2008. Reply briefs were filed by Commerce Bank and Brubacher on October 2, 2008, and October

8, 2008, respectively. After fully considering all of the evidence and arguments presented, this matter is now ready for final resolution.

## II. DISCUSSION

Initially, Brubacher objects to this court's consideration of Commerce Bank's motion for summary judgment based upon the same legal issues previously disposed of by the court in its decision overruling Commerce Bank's preliminary objections. On December 4, 2007, Commerce Bank filed preliminary objections challenging the enforceability of Brubacher's mechanics' lien claim based on, inter alia, the existence of a stipulation against liens that was filed on October 3, 2006. The parties fully briefed the legal issues[3] associated with Commerce Bank's arguments and this court overruled the preliminary objections by order dated February 4, 2008. There were no factual issues for the court to resolve in determining whether Brubacher's claim was barred by some "exemption or immunity of the property from lien, or for

---

3. Originally, Commerce Bank raised six objections to Brubacher's complaint. (See brief of Commerce Bank in support of preliminary objections.) However, following receipt of Brubacher's brief in opposition to the preliminary objections, Commerce Bank filed a praecipe to withdraw four of the six objections. (See defendant's praecipe to withdraw certain preliminary objections filed January 15, 2008.) The matter proceeded on just two objections: (1) the stipulation against liens, filed prior to the effective date of the amendments, barred any mechanics' lien claim from being filed by any subcontractor or sub-subcontractor; and (2) Brubacher, as a subcontractor to a subcontractor, was not covered within the definition of "subcontractor" under the version of the Mechanics' Lien Law as it existed in 2006, prior to the effective date of the amendments.

lack of conformity with [the Mechanics' Lien Law]." See 49 P.S. §1505. Rather, the issues raised by Commerce Bank were purely legal in nature. Thus, Brubacher contends that Commerce Bank is now barred from re-litigating in this motion for summary judgment any of the issues it raised in its preliminary objections.

Commerce Bank notes in its motion for summary judgment that it requested oral argument on the preliminary objections and that the court rendered its decision without giving Commerce Bank the benefit of arguing its position to the court. Rule 211 of the Pennsylvania Rules of Civil Procedure states that "[a]ny party or the party's attorney shall have the right to argue any motion. . . ." Pa.R.C.P. 211. In the January 15, 2008, praecipe to assign the preliminary objections for disposition, Commerce Bank did include a request for oral argument pursuant to Lancaster County Local Rule of Civil Procedure no. 1028(c).[4] Candidly, this court must acknowledge that it did not take notice of this request for oral argument and, therefore, proceeded to rule on the objections solely upon the briefs filed by the parties. Had the court been aware of Commerce Bank's request for oral argument, it would have been scheduled. Nonetheless, Commerce Bank failed to seek reconsideration of this court's order overruling its preliminary objections without benefit of oral argument or an opinion.

---

4. Local Rule 1028(c) provides, in relevant part:

"(7) Oral argument. Any party may request oral argument by filing a praecipe. Oral argument shall be held at such time and place as the judge shall direct." L.C.R.C.P. no. 1028(c)(A)(7).

Rather, it appears that it was Commerce Bank's intention to file a motion for summary judgment based on the stipulation against liens. (See Commerce Bank's objection to Brubacher's praecipe requesting a pretrial conference at 6.) Having now filed that motion, curiously, Commerce Bank has not requested oral argument. In any event, given this court's failure to hear oral argument on the preliminary objections of Commerce Bank and so as to eliminate any possibility of prejudice to the parties, we will not bar Commerce Bank from rearguing its prior legal position in a motion for summary judgment.

"In evaluating [a motion for summary judgment,] we focus on the legal standard articulated in the summary judgment rule, Pennsylvania Rule of Civil Procedure 1035.2:

"The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a nonmoving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof . . . establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Dahl v. Ameriquest Mortgage Company,* 954 A.2d 588, 593 (Pa. Super. 2008) (quoting *Murphy v. Duquesne University of the Holy Ghost,* 565

Pa. 571, 590, 777 A.2d 418, 429 (2001). (citations and quotation marks omitted)

In the instant case, the cross-motions for summary judgment present questions of statutory interpretation of the Pennsylvania Mechanics' Lien Law. Therefore, we begin with the Statutory Construction Act, 1 Pa.C.S. §1501 et seq., and the specific provisions which will guide our discussion:

"Under the Act, it is fundamental that '[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly[,]' and that '[e]very statute shall be construed, if possible, to give effect to all its provisions.' 1 Pa.C.S. §1921(a). In this regard, the Act instructs that '[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.' 1 Pa.C.S. §1921(b). When, however, the words of the statute are not explicit, the General Assembly's intent is to be ascertained by considering matters other than statutory language, like the occasion and necessity for the statute; the circumstances of its enactment; the object it seeks to attain; the mischief to be remedied; former laws; consequences of a particular interpretation; contemporaneous legislative history; and legislative and administrative interpretations. 1 Pa.C.S. §1921(c).

"The Act provides that '[w]ords and phrases shall be construed according to the rules of grammar and according to their common and approved usage'; and that 'technical words and phrases and such others as have acquired a peculiar and appropriate meaning . . . shall be

construed according to such peculiar and appropriate meaning or definition.' 1 Pa.C.S. §1903(a). Further, if the General Assembly defines words that are used in a statute, those definitions are binding. . . . The Act allows a court to presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable; that the General Assembly intends the entire statute to be certain and effective, and intends to favor the public interest as against any private interest. 1 Pa.C.S. §1922(1), (2), (5). Moreover, the Act sets forth rules for a court to follow when provisions in or among statutes are in conflict and cannot be reconciled. 1 Pa.C.S. §§1933-1936." *Pennsylvania Associated Builders and Contractors Inc. v. Commonwealth, Department of General Services,* 593 Pa. 580, 591, 932 A.2d 1271, 1278 (2007). (citation omitted) See also, *Dahl,* 954 A.2d at 593-94.

We now consider whether plaintiff Brubacher has established a cause of action against Commerce Bank under the Mechanics' Lien Law. 49 P.S. §§1101-1902. This law provides the right to lien a property for the payment of all debts due by an owner to the contractor or by the contractor to a subcontractor for labor or materials. 49 P.S. §1301. The statute historically provided contractors and subcontractors with a statutory method to secure payment for their work or materials. In order for a contractor or subcontractor to file a lien against an owner's property under the statute, the claim had to be filed with a local prothonotary within four months of the work's completion. Properly filed mechanics' liens would then become superior in priority to previously filed liens on the property, including mortgage liens.

As a protective measure for other lien holders, the statute provided that contractors could, prior to the commencement of work, waive the right to such subsequent liens by entering into a written agreement with the property owner. This "waiver of liens" or "stipulation against liens" was also binding on subcontractors. Lenders, owners and title insurers came to require the execution and filing of such lien waivers prior to the commencement of construction projects, in order to insure that contractors' liens would not be superior to prior filed liens.

The Mechanics' Lien Law of 1963 was amended by General Assembly House Bill 1637, also known as Act 52, which was signed into law by Governor Edward G. Rendell on June 29, 2006. The amendments to the Mechanics' Lien Law became effective approximately six months later on January 1, 2007. These amendments significantly changed Pennsylvania law on the use of stipulations against liens. Prior to January 1, 2007, the Mechanics' Lien Law allowed owners and contractors to waive a subcontractor's right to file a mechanics' lien by simply filing a stipulation against liens with the prothonotary prior to the subcontractor performing any work. See 49 P.S. §1401. The Pennsylvania Legislature amended the law to declare that such waiver of lien rights are against public policy, unlawful and void. Specifically, the Mechanics' Lien Law was amended to provide that: "[e]xcept as provided in subsection (a)(2), *a waiver by a subcontractor of lien rights is against public policy, unlawful and void,* unless given in consideration for payment for the work, services, materials or equipment provided and only to the extent that such payment

is actually received, or unless the contractor has posted a bond guaranteeing payment for labor and materials provided by subcontractor." 49 P.S. §1401(b)(2). (emphasis added)[5]

Thus, waivers of liens entered into *prior to* the commencement of construction are now prohibited by Act 52. The new terms are the same for the prohibition against waivers of liens by subcontractors "unless the contractor has posted a bond guaranteeing payment for labor and materials provided by subcontractors."

More significantly, these amendments provide sub-subcontractors who enter into contracts after January 1, 2007 with the right to file mechanics' liens, a right that did not exist prior to the amendments to the Mechanics' Lien Law. The amendments state in section 4 of Act 52 that "[t]he amendment or addition of sections 201(14), 401 and 402 of the act *shall* apply to contracts entered into on or after the effective date of this section." (emphasis added) Section 5 states: "This act shall take effect January 1, 2007." See 49 P.S. §1401 (Historical and statutory notes). Both parties can agree that the amendments to the Mechanics' Lien Law at issue in this case

---

5. Subsection (a)(2) only applies to residential construction, and has no applicability to the present non-residential project. Under the new law, both contractors (including architects and engineers in direct contract with the property owner) and subcontractors still may waive their rights to file a mechanics' lien against a property owner with respect to a "residential" project, but only if the total contract price of the project is less than $1,000,000. A residential project is defined as property on which there is a residential building or which is zoned or otherwise approved for residential development, planned development or agricultural use.

must be given prospective effect only. See 1 Pa.C.S. §1926 ("no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."); see also, *Budnick v. Budnick,* 419 Pa. Super. 172, 177, 615 A.2d 80, 83 (1992) ("[I]n the absence of clear language to the contrary, statutes must be construed to operate prospectively only."). But the parties argue this interpretation to different conclusions.

Commerce Bank contends that the stipulation against liens, which predates the effective date of the amendments to the Mechanics' Lien Law, waives the lien rights of every subcontractor or sub-subcontractor on the project, regardless of when their contract was signed. To conclude otherwise, claims Commerce Bank, would be to grant a sub-subcontractor such as Brubacher a greater right to lien than its upstream subcontractor would otherwise have. Brubacher, on the other hand, argues that this was precisely the clear intention of the legislature and that it does, indeed, have greater rights to file a mechanics' lien claim than McElroy since Brubacher entered into its sub-subcontract *after* the effective date of the amendments, January 1, 2007, and McElroy entered into its subcontract prior to January 1, 2007.

The statute expressly states that the amendments "shall apply to contracts entered into on or after the effective date of this section." (See Act 52, §4.) In applying the Statutory Construction Act rules, it is clear that this language is "clear and free from all ambiguity," in that it applies to *all* contracts entered into on or after January 1, 2007. Commerce Bank would have this court interpret this language to mean only those contracts between the

owner and contractor. The legislature did not limit the type of "contract" covered by section 4.

Had the legislature intended to limit the amendments to contracts entered into between the contractor and owner after January 1, 2007, it could easily have stated such. Of significance is that the legislature made the distinction between all contracts and contracts between the contractor and owner in section 1401(A)(1), where it specifically references the "contract price between the owner and the contractor." In making this distinction, the legislature recognized that there are different contracts on a construction project, and made clear that the $1,000,000 threshold applied to contracts between the contractor and owner only. The legislature chose not to include such a restriction within section 1401(b)(1) or section 1401(b)(2), and provided clear and unambiguous language that the amendments apply to any contract entered on or after January 1, 2007.

Brubacher did not sign a contract until April 27, 2007, almost four months after the effective date of the amendments to the Mechanics' Lien Law. As a subcontractor to a subcontractor, Brubacher had every right to expect that the amendments to the Mechanics' Lien Law applied to its contract, and that there would be no ability by the owner to avoid a lien should McElroy fail to pay Brubacher. Recognizing the injustice and inequity of allowing an owner and contractor to waive a subcontractor's right to file a lien claim before it even entered into a subcontract or began to perform any work, the Pennsylvania Legislature amended the Mechanics' Lien Law to declare that such waiver of lien rights is against pub-

lic policy, unlawful and void, and provided a clear date when such rights ended, *i.e.,* for all contracts entered into on or after January 1, 2007.[6]

It is important to emphasize that prior to January 1, 2007, a sub-subcontractor in Brubacher's position had no right to file a mechanics' lien. The amendments to the Mechanics' Lien Law expanded the definition of "subcontractor" to include a person who enters into a contract with a subcontractor who is in direct privity with the contractor, in other words, a sub-subcontractor or second-tier subcontractor. 49 P.S. §1201(5). Brubacher executed a contract with a subcontractor in direct privity of a contract with a contractor since McElroy had contracted directly with Premier. As such, pursuant to this new definition of "subcontractor," Brubacher had the right to file a lien against Commerce Bank's property rights, where no such right existed before January 1, 2007.

Despite that a sub-subcontractor such as Brubacher had no right to assert a mechanics' lien prior to January 1, 2007, Commerce Bank claims that it effectively waived this non-existent right by the filing of the stipulation against liens. Commerce Bank could not waive a right that did not yet exist. A condition to the waiver of a right is that the right actually exist. There was no right for a sub-subcontractor to file a lien at the time the stipulation against liens was filed on October 3, 2006. As such, the stipulation against liens could not waive a

---

6. Commerce Bank's October 3, 2006 stipulation against liens clearly remains effective for those contracts entered into *before* the effective date of the amendments to the Mechanics' Lien Law, January 1, 2007.

right that did not even come into existence as a matter of statutory law until three months after the stipulation against liens was filed.

In an attempt to avoid the clear language of the amendments granting sub-subcontractors new rights as of January 1, 2007, Commerce Bank cites to cases that stand for the proposition that a subcontractor can have no greater lien rights than the contractor. See for example, *Shannon v. Philadelphia German Protestant Home for the Aged,* 16 Pa. Super. 250 (1900). As even this case makes clear, however, the legislature has the power to grant new statutory rights such that a sub-subcontractor might have a greater right to file a claim than a subcontractor or contractor where the sub-subcontractor executed a sub-subcontract after the effective date of amendments to the Mechanics' Lien Law. Brubacher's right to file a mechanics' lien claim is not based on some general rule of law regarding derivation of rights from its subcontractor or contractor, but on express rights granted by the legislature effective as for sub-subcontracts executed after January 1, 2007.

Accordingly, Brubacher is entitled to summary judgment as Commerce Bank's stipulation against liens is deemed void, unlawful and against public policy as to Brubacher's claim as a sub-subcontractor who entered into its contract with McElroy after the effective date of the amendments to the Mechanics' Lien Law.

Assuming, arguendo, that the stipulation against liens does apply to sub-subcontracts signed after January 1, 2007, Brubacher argues, alternatively, that the stipulation against liens does not even cover its work on the project.

Specifically, the stipulation in this case refers only to materials and labor "necessary for cast stone work at the leased premises." (See stipulation against liens, attached to Commerce Bank's motion as exhibit "B".) This limiting language must be strictly interpreted. In *Shannon, supra,* the Superior Court discussed the impact of limiting language in a no-lien agreement between the owner and contractor: "A covenant limited to any class of work or material, as bricks or brickwork, would be effective only as to that particular class. A covenant in any manner limited could not, in the face of this act, be enlarged to embrace matters not within the limitation." 16 Pa. Super. at *2. This pronouncement by the Superior Court clearly directs that limiting language in a no-lien agreement will be limited to the class of work or materials described in the agreement. In the instant case, the class of work and materials were described as "cast stone work." Brubacher had nothing to do with the supply and installation of the cast stone work. Accordingly, the stipulation against liens does not apply to the paving materials and services provided by Brubacher.

Having determined that Brubacher is entitled to summary judgment, the question becomes whether Brubacher is entitled to prejudgment interest. Commerce Bank, in support of its argument that Brubacher is entitled only to amounts owed for labor and materials, cites to the Superior Court's decision in *Artsmith Development Group Inc. v. Updegraff,* 868 A.2d 495 (Pa. Super. 2005). The *Artsmith* case, however, is contrary to previous appellate court decisions, and countless common pleas decisions, which authorized interest calculated from the date when the mechanics' lien claim was first filed. See

*In re Oxnard's Estate,* 152 Pa. 621, 25 A. 568 (1893) and *Niland v. Gill,* 99 Pa. Super. 107 (Pa. Super. 1930).

Moreover, the *Artsmith* case is distinguishable on its facts. In *Artsmith,* it appears that the contractor, who had successfully prevailed on its mechanics' lien claim, was making a claim for interest based on some contractual interest rate greatly in excess of the statutory rate of 6 percent. Here, Brubacher is seeking interest at the statutory rate of 6 percent based on the general rule of law that a successful litigant on a liquidated claim is entitled to recover prejudgment interest at the statutory rate. This rule of law applies equally to mechanics' lien claims, and must be applied in this case.

## III. CONCLUSION

For the reasons set forth above, the motion for summary judgment of Brubacher Excavating Inc. will be granted.

Accordingly, we enter the following:

## ORDER

And now, December 22, 2008, upon consideration of the cross motions for summary judgment filed by the parties, it is hereby ordered that summary judgment is granted in favor of Brubacher Excavating Inc., and judgment shall be entered in favor of Brubacher Excavating Inc., in the amount of $42,976.45, together with prejudgment interest at the statutory rate of 6 percent from June 20, 2007 to the date judgment is entered.