2018 PA Super 258

| | |
|---|---|
| GOLAN BARAK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| EYAL KAROLIZKI AND GAL ZEEV SCHWARTZ | |
| | No. 1672 WDA 2017 |

Appeal from the Order Entered, October 26, 2017
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s): GD 16-000990.

BEFORE:  OTT, J., KUNSELMAN, J. AND MUSMANNO, J.

OPINION BY KUNSELMAN, J.:                    **FILED  SEPTEMBER 18, 2018**

## I.    Introduction

Golan Barak filed a *lis pendens*[1] in the Allegheny County Department of Court Records' judgment index against a certain piece of real estate.[2]  In reviewing the *lis pendens*, the trial court applied the wrong legal test – namely, the standard for a preliminary injunction – and ordered the court clerks to remove the *lis pendens* from their judgment index.  In that same

---

[1] Latin, literally meaning "suit hanging" or "suit pending."

[2] A *lis pendens*, once properly indexed, provides notice to potential buyers that a piece of property is in litigation.  Anyone who buys such property takes title subject to the lawsuit's outcome.  Hence, so long as a *lis pendens* notice remains of record, no one can claim, in good faith, to have purchased the property without knowledge of the litigation.  In other words, anyone who buys real estate under *lis pendens* risks that the court might ultimately rule that they did not purchase good title and strip them of ownership.  **See *United States National Bank v. Johnson***, 487 A.2d 809 (Pa. 1985).

order, the trial court also erroneously directed that the proceeds from a sale of the real estate be placed into escrow pending this litigation's outcome. Mr. Barak appeals that order, and we vacate it in both respects. However, jurisdictional concerns and judicial restraint require us to remand, so a trial judge can apply the second part of Pennsylvania's *lis pendens* law in the first instance.

## II. Factual Background

In January of 2016, Mr. Barak filed a "Praecipe for Writ of Summons in Equity – Index as *Lis Pendens*" against Eyal Karolizki and Gal Zeev Schwartz to litigate ownership of a piece of real estate in Wilkinsburg. Mr. Barak's complaint contains one count of quiet title. Through it, he prays for (1) the voiding of Mr. Karolizki and Mr. Schwartz's deed and (2) restoration of his title. *See* Barak's Second Amended Complaint at 5.

After filing an answer and new matter, Mr. Karolizki and Mr. Schwartz moved the trial court to strike Mr. Barak's *lis pendens*, because they had found a potential buyer for the property. However, the buyer would not consummate the sale subject to the *lis pendens*.

The trial judge conducted a hearing on their motion to strike. Instead of presenting any competent testimony or evidence of record to prove that the equities required removal of the *lis pendens*, counsel for Mr. Karolizki and Mr. Schwartz offered the court his version of the facts and the law. The attorney even brought someone out of the gallery, who, without taking an oath or affirmation, identified herself as "Hope Feldman . . . a real estate

- 2 -

broker" to give her opinions on the property. N.T., 10/26/17, at 34. Thus, the defendants' attorney called no actual witnesses, moved the admission of no exhibits, and produced no record in support of the motion to strike the *lis pendens*.

In Mr. Barak's complaint, which we will accept as true due to the lack of any contradictory evidence from the defendants, he claims to be the rightful owner of the Wilkinsburg property. He further alleges that he attempted to sell it to Alon Rimoni in 2015,[3] and they entered into a sales agreement to do so. At the closing, after executing a deed of transfer to Mr. Rimoni, Mr. Barak learned that Mr. Rimoni did not bring any money to pay for the land. However, Mr. Barak did not tear up or void the signature page of the executed deed.

Instead, Maximillian F. Beier, Esq., the attorney facilitating the closing, agreed, in writing, to hold Mr. Barak's executed deed in escrow until Mr. Rimoni produced the funds. **See** Exhibit D of Second Amended Complaint. A few days later, at the direction of Mr. Rimoni, Attorney Beier used Mr. Barak's signature page as grantor from the deed in escrow and attached it to a new deed. This new deed purported to transfer title from Mr. Barak

---

[3] Alon Rimoni is not a party in this litigation.

directly to Mr. Karolizki and Mr. Schwartz. Attorney Beier recorded this fraudulent deed in the Allegheny County Department of Real Estate.[4]

Mr. Barak says he received no compensation from that transfer. He wants to regain legal title to the land, so he sued Mr. Karolizki and Mr. Schwartz in this action.

At the hearing on the *lis pendens*, counsel for Mr. Karolizki and Mr. Schwartz argued that, to maintain a *lis pendens* in the court's records, "plaintiffs have to show six things under the case law . . . because the courts have said already . . . that a *lis pendens* acts as an injunction." N.T., 10/26/17, at 12-13.

After the defendants' attorney explained in detail why Mr. Barak did not deserve a preliminary injunction, he offered a convenient solution:

> Now, what I have proposed . . . is that we allow the *lis pendens* to be removed and . . . the money from the sale be placed into the Department of Court Records, and it cannot be touched by any party during this litigation. In fact, what I am proposing . . . [is] that we would need a court order . . . [to] release the funds at the conclusion of the litigation, not before. And whoever wins takes the money.

*Id.* at 19. Without even hearing Mr. Barak's side of the case, the trial judge decided that the "escrow sounds like a good idea to me." *Id.* at 20.

_____

[4] Most Pennsylvania counties call this department the recorder of deeds.

But Mr. Barak's attorney, skeptical of defense counsel's proposal, still wished to be heard. "Your Honor, if I may," he interrupted, "Your Honor, Chris Hasson for Golan Barak who's the plaintiff in this matter." *Id.*

Attorney Hasson then attempted to draw the judge's attention to a chart and several documents he had passed to the bench. But he managed two sentences before the judge, fixated on defense counsel's proposal, asked:

| | |
|---|---|
| **THE COURT:** | Well, what's wrong with the escrow? |
| **HASSON:** | My client doesn't want to sell the property. He wants to keep the property. |
| **THE COURT:** | Well, he sold it already. |
| **HASSON:** | He did not sell it already. |
| **THE COURT:** | What was he doing in Beier's office? |
| **HASSON:** | He was attempting to sell the property, but the proceeds for the sale were never produced. |
| **THE COURT:** | Well – |
| **HASSON:** | If Your Honor will give me a moment to explain what happened . . . |
| **THE COURT:** | You're going into the whole program. I want to know why escrow isn't a good thing. |

*Id.* at 20-21.

After discussing purchase prices, various offers, and where the parties live, the judge allowed Attorney Hasson to present his argument. *See id.* at 22-26. He explained that his client filed suit to undo the allegedly fraudulent

deed that Attorney Beier had created and recorded. He also said that Mr. Barak has a separate case pending against Attorney Beier for malpractice, in which Attorney Beier filed an answer admitting "that he took the deed that was signed" by Mr. Barak, "pulled the coversheet off of that deed, and he prepared a new coversheet that showed the deed going from Golan Barak to the defendants in this case, and then he recorded that deed." *Id.* at 26.

After this exchange, the hearing went far afield. The judge referenced the unrelated case of *DiSalle v. P.G. Publishing Company*, 544 A.2d 1345 (Pa. Super. 1988). Opposing counsel argued with one another. Then, Ms. Feldman came forward with her unsworn statements. She said that the property had fallen into disrepair and "[t]axes have not been paid since Mr. Barak took over the property." *Id.* at 34.

Attorney Hasson responded by saying that Mr. Barak had:

> paid the taxes when he owned it. [Ms. Feldman's] clients have been on the deed for two years and have never paid the taxes – her clients have not paid the taxes since they've been on the deed. Of course my client hasn't paid the taxes. He doesn't have his name on the deed. They don't even allow him in the property. They won't even allow him to have an opinion about the sales value here. If the property is under disrepair, that's their fault. The taxes have not been paid, that's their fault.

*Id.*

| | |
|---|---|
| **THE COURT:** | The disrepair is hardly their fault. |
| **HASSON:** | How is it not their fault? They've had title to the property – |
| **THE COURT:** | Disrepair in two years? |

| | |
|---|---|
| **HASSON:** | First of all, the house is worth $300,000. |
| **THE COURT:** | No. no. This case does not pass the smell test. I'll sign [the defendants'] order. |

* * * * * *

| | |
|---|---|
| **HASSON:** | A query, Your Honor. Under your order, you're removing the *lis pendens*. They're clearly going to sell the property. They have an agreement to sell the property. My client has a pending lawsuit to quiet title. That's the only claim, one count to quiet title. He proves his case and comes back – |
| **THE COURT:** | He gets the money. |
| **HASSON:** | Comes back in six months and proves that he doesn't want the money, he wants the title – |
| **THE COURT:** | Well, too bad. |
| **HASSON:** | Is that the Court's position? |
| **THE COURT:** | Too bad. |

*Id.* at 35-36.

The trial judge signed the order removing Mr. Barak's *lis pendens* from the judgment index and simultaneously ordered the court clerks to hold any proceeds from a sale in escrow until the end of the quiet title action.

On November 3, 2017, Mr. Barak filed this appeal. Two weeks later, this Court issued a *per curium* rule to show cause why it should not quash his appeal as interlocutory, pursuant to **Levitt v. Patrick**, 976 A.2d 581 (Pa.

Super 2009) (holding that, if any claim remains outstanding, then the order is generally not appealable).

Counsel for Mr. Barak filed an answer to the rule to show cause. Mr. Karolizki and Mr. Schwartz did not respond. This Court then discharged its rule and deferred the question of whether a party may immediately appeal an order striking *lis pendens* to this panel.

### III. Analysis

Mr. Barak's appellate brief contains two issues. The first challenges the striking of his *lis pendens* as an abuse of discretion and legal error. ***See*** Barak's Brief at 4. Among other things, Mr. Barak argues that the trial judge erred as a matter of law when he applied the preliminary-injunction test to the *lis pendens*. Mr. Barak's second issue claims that the order removing his *lis pendens* "ignored the admitted fraud of Attorney Beier." ***Id.***

### A. Whether an order striking a *lis pendens* is immediately appealable.

Preliminarily, however, we must resolve the jurisdictional question that this Court raised in November of 2017 – *i.e.*, whether an order striking *lis pendens* is interlocutory.

Although no party has challenged our jurisdiction on such grounds, we may always review our jurisdiction *sua sponte*. ***See, e.g., M. London, Inc. v. Fedders Corp.***, 452 A.2d 236, 237 (Pa. Super. 1982). "Jurisdiction is purely a question of law; the appellate standard of review is *de novo* and the

scope of review plenary." ***Commonwealth v. Seiders***, 11 A.3d 495, 496–97 (Pa. Super. 2010).

> A party may only appeal:
>
> (1) a final order or an order certified by the trial court as a final order (Pa.R.A.P. 341); (2) an interlocutory order as of right (Pa.R.A.P. 311); (3) an interlocutory order by permission (Pa.R.A.P. 312, 1311; 42 Pa.C.S.A. § 702(b)); or (4) a collateral order (Pa.R.A.P. 313). The question of the appealability of an order goes directly to the jurisdiction of the Court asked to review the order.

***Moyer v. Gresh***, 904 A.2d 958, 963 (Pa. Super. 2006) (citation omitted).

Generally speaking, "Superior Court shall have exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas . . . ." 42 Pa.C.S.A. § 742. "A final order is any order that . . . disposes of all claims and of all parties . . . ." Pennsylvania Rule of Appellate Procedure 341(b). "An order is final, and not interlocutory, if it prevents a party from presenting the merits of its claim in the trial court." ***Noll by Noll v. Harrisburg Area YMCA***, 643 A.2d 81, 83 (Pa. 1994).

An interlocutory order, on the other hand, is any order that "does not dispose of all claims and all parties." ***Commerce Bank/Harrisburg, N.A. v. Kessler***, 46 A.3d 724, 736 (Pa. Super. 2012). Basically, final orders end a case. Interlocutory orders do not.

In most instances, parties may not appeal an interlocutory order when a trial judge issues it.[5]  **See** 16 STANDARD PENNSYLVANIA PRACTICE 2d §86:17 at 197-198, n. 17 (collecting cases).  Rather, parties must wait for the court of common pleas to enter a final order.  Once that occurs, all interlocutory orders become appealable along with the final order.  "The reasons for requiring appeals only from final orders are (1) to preclude piecemeal determinations and the consequent protraction of litigation and (2) to prevent cases from being brought to the appellate courts in installments." **Id.** at 198.

Also, the possibility exists that the party against whom a judge ruled in an interlocutory order might ultimately win the case.  Or the matter might settle without the entry of a final order.  In those situations, there is no need for an appellate court to review the questionable interlocutory order.  In this sense, generally speaking, "discouraging interlocutory appeals furthers the goals of judicial economy." **Stevenson v. General Motors Corp.**, 521 A.2d 413, 416 (Pa. 1987).

1.   An order striking *lis pendens* is a final order under binding case law.

In the case at bar, Mr. Barak cited **McCahill v. Roberts**, 219 A.2d 306 (Pa. 1966), to answer this Court's inquiry of whether an order striking *lis*

---

[5] Some exceptions to that rule appear in Pennsylvania Rule of Appellate Procedure 311.  Ironically, that list includes preliminary injunctions.

*pendens* is interlocutory. Mr. Karolizki and Mr. Schwartz neither disputed Mr. Barak's reliance upon **McCahill** nor claimed that we lack jurisdiction over this appeal.[6]

**McCahill** involved an equity action, where the plaintiffs sued "(1) to have their title to the building judicially declared; (2) to enjoin any sale of the real estate in question which could prejudice their rights; and, (3) to obtain other relief deemed to be appropriate." **Id.** at 308. Like Mr. Karolizki and Mr. Schwartz, the defendants in **McCahill** petitioned the trial court to strike the plaintiffs' *lis pendens* notice, because they had found a buyer for the land. And, just like the trial judge here, the trial judge in **McCahill** entered an order striking *lis pendens* and "directed that the net proceeds of the sale be held in escrow pending final adjudication of the equity action." **McCahill** at 308.

The plaintiffs immediately appealed, but the appellees moved to quash on the grounds that the order striking *lis pendens* was interlocutory. The Supreme Court of Pennsylvania, denying quashal said, "We cannot reach this conclusion. The court's order is final in that it effectively puts the plaintiffs

---

[6] That said, an appellee's silence as to our lack of appellate jurisdiction can never confer jurisdiction if the order under review is interlocutory. **See** 42 Pa.C.S.A. § 704(b)(2) (prohibiting the exercise of appellate jurisdiction via appellee's waiver when an appellant attempts "to take an appeal from an interlocutory order which has not been made appealable by law or pursuant to section 702(b)").

'out of court,' so far as their present claim is concerned, *i.e.*, full and complete ownership of the building with the right of removal." ***Id.***

Twenty years later, however, the Justices said exactly the opposite. They stated that an order striking a *lis pendens* is not final, because it does not settle "rights, duties, or liabilities between the parties, puts no one out of court, and does not terminate the underlying litigation by prohibiting parties from proceeding with the action." ***U.S. National Bank in Johnston v. Johnson***, 487 A.2d 809, 812 (Pa. 1985). But ***U.S. Nation Bank*** did not consider or expressly overrule ***McCahill***.

We must ascertain which of the two, conflicting, Supreme Court of Pennsylvania precedents is binding upon this Court. As we discuss below, the statements from ***U.S. National Bank*** are *dicta*,[7] while the holding in ***McCahill*** is directly on point and remains binding precedent. Ultimately, we find that ***McCahill*** controls our disposition of this issue.

The issue in ***U.S. National Bank*** was whether an order dismissing a party from an equity action on preliminary objections constituted a final

---

[7] *Obiter dictum* (pl. *dicta*) is Latin, meaning "something said in passing," and is defined as any "judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive). – Often shortened to *dictum* . . . ." BLACK'S LAW DICTIONARY at 1240 (10th. Ed. 2009). "No court . . . is obliged to treat a *dictum* of another court (or, for that matter, its own *dicta*) as binding precedent." ***Maloney v. Valley Med. Facilities, Inc.***, 984 A.2d 478, 490 (Pa. 2009) (citation omitted). Because *dicta* are not precedential statements, they have no force or effect of law and do not bind us.

order for appellate purposes. The case concerned the Uniform Fraudulent Conveyance Act; a *lis pendens* notice was not involved. *Lis pendens* only came into the discussion because the Supreme Court sought to resolve "the confusion generated by" *Houston-Starr Co. v. Virginia Mansions*, 441 A.2d 1334 (Pa. Super. 1982), regarding when to appeal in equity, (*i.e.*, whether a decision under the then-existing rules of equity required *en banc* review in the trial court before an appeal could be made to the Superior Court).[8] *U.S. National Bank* at 812. Upon granting review of this issue, the Supreme Court of Pennsylvania overruled *Houston-Starr*. The Justices explained that the "adjudication referred to in Rule 1517 is the chancellor's proposed final disposition of a complaint *after* trial which reaches the very merits of the action . . . ." *U.S. National Bank* at 812 (emphasis in original).

In reaching its decision that *en banc* review was not necessary, the Supreme Court of Pennsylvania applied its long-held rule that the "sustaining

---

[8] In *Houston-Starr Co. v. Virginia Mansions*, 441 A.2d 1334 (Pa. Super. 1982), this Court held that an order striking *lis pendens* was an "adjudication" under former Pennsylvania Rule of Civil Procedure 1517, governing equity actions. (The Supreme Court of Pennsylvania repealed Pa.R.Civ.P. 1517 when it merged the courts or law and equity.) Under the old equity rules, the party who lost before a chancellor had to file exceptions to an adverse "adjudication" before filing an appeal. Then, the court of common pleas, sitting *en banc*, would review the chancellor's rulings. The *en banc* decision from the trial court, then became the final, appealable order.

of preliminary objections in the nature of a demurrer and dismissal of the equity complaint is a final appealable order." *Id.* at 813 (citations omitted). Thus, the Justices quashed the bank's appeal as untimely; although the bank dutifully followed the procedure of **Houston-Starr**, by requesting *en banc* review at the trial court, unbeknownst to it, the 30-day-appeal clock ran out.

Notably, the quashing of the bank's untimely appeal from preliminary objections in **U.S. National Bank** had nothing to do with whether an order striking a *lis pendens* is interlocutory. Without reconsidering its prior holding in **McCahill**, **supra.**, or citing any authority whatsoever, the **U.S. National Bank** Court simply stated:

> [an] order lifting a *lis pendens* during the course of an equity action fixes neither rights, duties, nor liabilities between the parties, puts no one out of court, and does not terminate the underlying litigation by prohibiting parties from proceeding with the action. Accordingly, the requisite "finality" is not present when a *lis pendens* is lifted and the order, therefore, is interlocutory.

*Id.* at 812.

Those two statements, made in passing, had nothing to do with the disposition of the issue before the Justices. Thus, we conclude that **U.S. National Bank**'s declaration that an order striking a *lis pendens* is interlocutory was "unnecessary to the decision in the case . . . ." BLACK'S LAW DICTIONARY at 1240 (10th. Ed. 2009). Those statements, therefore, are *dicta*, and they are "not controlling . . . ." **U.S. Steel Co. v. Allegheny County**, 86 A.2d 838 (Pa. 1952).

- 14 -

Because, procedurally speaking, **McCahill** is identical to the case at bar, and because **U.S. National Bank** failed to acknowledge **McCahill** as binding precedent – much less give it the full weight of *stare decisis* – we adhere to the rule from **McCahill** and disregard **U.S. National Bank** as *dicta*.[9] Thus, we agree with Mr. Barak, that the order at bar striking the *lis pendens* is final under **McCahill** and immediately appealable.

2.  <u>Alternatively, an order striking *lis pendens* also meets the definition of a collateral order.</u>

Even if the statements in **U.S. National Bank** are not *dicta* and the Supreme Court of Pennsylvania did covertly overrule **McCahill**, we still hold that an order striking *lis pendens* is immediately appealable. We do so by applying the collateral order rule.

"A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied

---

[9] A panel of this Court, also without analysis, followed the **U.S. National Bank**'s *dicta* in **Flitter v. Chandor**, 527 A.2d 1050, 1051 (Pa. Super. 1987), and held "that an order lifting a *lis pendens* is nonappealable . . . ." That statement resulted in partial quashal of the appeal. However, the **Flitter** Court did not address the issue of whether the **U.S. National Bank** statements were *dicta* before applying them. Also, the **Flitter** Court did not grapple with **McCahill**'s contradictory holding. Therefore, we distinguish **Flitter** and decline to follow it, on the grounds that it relied upon the *dicta* from **U.S. National Bank**, in direct contravention of the binding precedent in **McCahill**. Essentially, the **Flitter** Court should have followed the rule in **McCahill**, because the Supreme Court of Pennsylvania has not reconsidered or formally overturned that holding in an on-point case.

review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." Pa.R.A.P. 313(b). At the outset, we note that the Supreme Court of Pennsylvania first adopted Pa.R.A.P. 313 in 1992. This Rule did not exist when the courts decided *U.S. National Bank* and *Flitter v. Chandor*, 527 A.2d 1050 (Pa. Super. 1987). Thus, neither decision considered Rule 313 or impacts our analysis under the Rule.

The seminal case on Rule 313(b) is *Ben v. Schwartz*, 729 A.2d 547 (Pa. 1999). There, plaintiffs sued a dentist for malpractice. As part of the discovery phase, the trial judge ordered the Bureau of Professional and Occupational Affairs to disclose certain investigative documents to the plaintiffs. The Bureau immediately appealed the order directing disclosure. The Commonwealth Court of Pennsylvania, finding that order interlocutory, quashed.

The Bureau appealed to the Supreme Court of Pennsylvania, and the Justices reversed. In so doing, they set forth the parameters "of the [three] elements defining a collateral order – [*i.e.*,] separability, importance, and irreparable loss . . . ." *Id.* at 550 (*quoting Genivia v. Frisk*, 725 A.2d 1209 (Pa. 1999).

First, a collateral order must be "separable from and collateral to the main cause of action." Pa.R.A.P. 313(b). The element of separability requires that the merits of the appeal must be resolvable "without analysis of" the substantive claims in the underlying lawsuit. *Ben* at 552.

- 16 -

Whether Mr. Barak may maintain a *lis pendens* is separable from and collateral to his claim of title quiet. In determining whether the *lis pendens* may be maintained, a court does not analyze who owns the property in question. Only that analysis would decide the substantive issue raised in Mr. Barak's complaint.

Instead, in reviewing the order to strike the *lis pendens*, a court needs to analyze (1) whether Mr. Barak's complaint brought title into question and (2) whether, after balancing of the equities, the interests of justice weigh in favor of maintaining the *lis pendens* or removing it from the judgment index. ***See, e.g., Rosen v. Rittenhouse Towers***, 482 A.2d 1113, 1116 (Pa. Super. 1984) (articulating the two-part test for reviewing a *lis pendens*). Thus, we may decide whether the trial judge correctly construed and applied the legal test to strike *lis pendens* "without analysis of" who owns the Wilkinsburg property. ***Ben*** at 552. Mr. Barak's appellate issue is separable from his underlying claim that Mr. Karolizki and Mr. Schwartz stole title to the property or fraudulently obtained it.

Second, for an order to be collateral, it must involve a "right . . . too important to be denied review." Pa.R.A.P. 313(b). "In analyzing the importance prong, we weigh the interests implicated in the case against the costs of piecemeal litigation." ***Ben*** at 552 (***quoting Geniviva***, at 1213). Also, "it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." ***Id.*** (***quoting Geniviva***, at 1213-1214). The

"issue is important if the interests that would potentially go unprotected without immediate appellate review . . . are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Id.* In other words, the public policy implications of the right involved must outweigh our usual aversion to fragmented appeals.

Here, Mr. Barak, is not simply protecting his right to maintain a *lis pendens* notice in the Allegheny County Department of Court Records. He seeks to safeguard the efficiency of our county-by-county recording systems and the rights of property owners in general.

To begin with, his appeal, if successful, will safeguard our recording system from abuse. If a court improperly removes a *lis pendens* from its judgment index, the party who won that improper removal has defeated the legislative intent behind the indexing requirement for a *lis pendens*. Indexing puts any potential buyers on notice that the property is subject to court jurisdiction by virtue of Mr. Barak's cause of action. Indeed, the very concept of *lis pendens* arises out of the equitable powers of the court to order specific performance concerning claims that touch and concern the land. *See Dice v. Bender*, 117 A.2d 725 (Pa. 1955). Hence, by putting potential buyers on notice, the General Assembly desires that all the world be protected from unintentionally purchasing a lawsuit along with a piece of land.

Thus, the indexing and proper maintenance of a *lis pendens* notice is itself a tool of judicial economy, because it may totally prevent or simplify

future litigation. Any person who buys a piece of property subject to *lis pendens* cannot later plead ignorance of the prior litigation and thereby force the relitigation of who owns the property. Curtailing secondary lawsuits and warning potential buyers of the legal ramifications of buying property upfront outweigh this Court's general goal of limiting the number of appeals that arise from one case.

By deciding Mr. Barak's claim that the trial court erroneously struck his *lis pendens* now, we will not only be disposing of this one issue. We will also be reducing the odds of another lawsuit entering our court system, should the underlying case end in Mr. Barak's favor.

Reduction of future lawsuits and efficiency of our recording systems assuage our disapprobation for interlocutory appeals. We therefore conclude that an order striking a *lis pendens* notice satisfies the second element of a collateral order.

Third, when a "claim will be irreparably lost," the order is collateral. Pa.R.A.P. 313(b). "In essence," the question is whether an erroneous trial court ruling "cannot be undone." **Ben** at 552.

Clearly, an order striking *lis pendens* satisfies this prong. As explained in more detail below, once a *lis pendens* is removed from the judgment index, the record owners – here, Mr. Karolizki and Mr. Schwartz – could sell the property to an unwitting third party. In fact, this case proves that the *lis pendens* notice served its purpose well. Mr. Karolizki and Mr. Schwartz had a buyer lined up for the property, but their buyer did not wish to take the

land subject to *lis pendens*.  In other words, the *lis pendens* notice helped the would-be buyer to make a fully informed decision about whether to buy both the property and its accompanying litigation.

But, if we fail to review the order striking this *lis pendens* immediately, the harm that could result if Mr. Barak is the rightful owner of the land would be unfixable.  If the order stands and the court clerks in Allegheny County remove the *lis pendens* while the litigation is still pending, Mr. Karolizki and Mr. Schwartz might find another potential buyer for the property without mentioning this litigation to that person.  If they make the sale, it would essentially end Mr. Barak's quiet title action against Mr. Karolizki and Mr. Schwartz, because they would no longer have record title for Mr. Barak to recoup.  Indeed, at that point, the order striking *lis pendens* would become moot, because Mr. Karolizki and Mr. Schwartz would clearly no longer own the property at bar.

Little wonder then that the **McCahill** Court concluded that an order striking *lis pendens* "effectively puts the plaintiffs 'out of court.'"  **McCahill**, 219 A.2d at 308.  Hence, the question of whether the trial judge erred in striking the *lis pendens* would then evade our appellate review.

And Mr. Barak would have to institute another lawsuit against the new buyer to recover title.  In that new case, he would need to show that the buyer did not take as a subsequent *bona fide* purchaser for value – a heavy lift – likely leaving Mr. Barak without the title he wanted from Mr. Karolizki and Mr. Schwartz.  The injustice of such a result is clear.

We conclude, therefore, that an order striking a *lis pendens* impacts a claim that Mr. Barak will irreparably lose if we do not review that order now. Critically, if the trial court erred, and if Mr. Karolizki and Mr. Schwartz illicitly resell the property, that harm "cannot be undone." **Ben** at 552.

Because an order striking a *lis pendens* notice satisfies all elements of Pa.R.A.P. 313, it meet the definition of a collateral order. Thus, Mr. Barak may appeal that order "as of right . . ." Pennsylvania Rule of Appellate Procedure 313 (a).

We therefore conclude that an order striking a *lis pendens* notice is an immediately appealable order, either as a final or collateral order. As such, this Court has appellate jurisdiction over Mr. Barak's appeal.

## B.     *Lis pendens* notices are NOT preliminary injunctions.

We limit the remainder of our review to Mr. Barak's claim that the trial judge applied the incorrect substantive law when he struck the *lis pendens* notice, because that error requires us to vacate and remand.

Which rule of law to apply is itself a question of law. As a result, "our standard of review is *de novo*, and our scope of review is plenary." **Snead v. Society for Prevention of Cruelty to Animals of Pennsylvania**, 985 A.2d 909, 912 (Pa. 2009).

Mr. Karolizki and Mr. Schwartz contend on appeal, as they did in the trial court, that a *lis pendens* "is analogous to a preliminary injunction because it effectively prevents, or enjoins, the record owner of real property

from transferring its interest in the property for full market value, or from undertaking construction." Karolizki/Schwartz Brief at 7-8. They claim that "for a court to maintain a *lis pendens* against a property, there are six essential prerequisites that the plaintiffs must establish prior to obtaining preliminary injunctive relief in the form of a *lis pendens*." **Id.**

To support their position, Mr. Karolizki and Mr. Schwartz rely upon **Philadelphia Waterfront Partners, L.P. v. Churchill Development Group, LLC**, 2007 Phila. Ct. Com. Pl. LEXIS 175 (C.C.P. Philadelphia 2007) and **Warehime v. Warehime**, 860 A.2d 41 (Pa. 2004). At oral argument, their attorney asserted that **Warehime** stands for the proposition that a *lis pendens* notice is analogous to a preliminary injunction order. He was quite mistaken.

**Warehime** deals with a family feud over a closely held corporation and a preliminary injunction to enjoin a shareholders' meeting. Thus, **Warehime** contains no quiet title action, no *lis pendens*, and no relevance.

Because **Warehime** is inapposite, Mr. Karolizki and Mr. Schwartz must rely upon **Philadelphia Waterfront** as their only supporting authority. In that case, the Court of Common Pleas of Philadelphia held – for the first time in Pennsylvania jurisprudence – that a *lis pendens* "is analogous to another equitable remedy, the preliminary injunction, because it effectively prevents, or enjoins, the record owner of real property from transferring its interest in the property for full market value, or . . . from undertaking construction." **Philadelphia Waterfront**, **supra**, at 8-9.

- 22 -

To be clear, that is **not** common law, and it has **never been** common law. A *lis pendens* in no way "prevents or enjoins" the sale or improvement of property, and *lis pendens* is totally unrelated to preliminary injunctions.

A *lis pendens* is simply a "notice, recorded in the chain of title to real property . . . to warn all persons that certain property is the subject matter of litigation, and that any interests acquired during the pendency of the suit are subject to its outcome." BLACK'S LAW DICTIONARY at 1073 (10th. Ed. 2014). A preliminary injunction, on the other hand, is a "temporary" "court order commanding or preventing an action . . . issued before or during trial to prevent an irreparable injury from occurring before the court has a chance to decide the case." **Id.** at 909 (combined definitions of "injunction" and "preliminary injunction").

Unlike a *lis pendens*, which functions *in rem* against the land and therefore does not command or prevent anyone from doing anything, an "injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing." 1 Howard C. Joyce, A TREATISE ON THE LAW RELATING TO INJUNCTION § 1, at 2 (1909). Thus, the fact that a *lis pendens* notice may discourage potential buyers from purchasing a piece of land is entirely a consequence of market forces. This result, if it comes to pass, has nothing to do with any court order, because the *lis pendens* is *not* a court order. It is a notice to curtail a future claim that someone took the land as a subsequent, *bona fide* purchaser for value, not subject to the

result of the underlying litigation. Therefore, analogizing a *lis pendens* to a preliminary injunction misses the mark. We hold preliminary injunctions and *lis pendens* notices are two distinct legal concepts, and we overrule any common pleas holding to the contrary.[10]

Here, the trial judge applied a preliminary injunction standard to strike the *lis pendens* notice. Thus, he erred.

We, instead, now turn to the law of *lis pendens* notices to resolve this appeal. The Supreme Court of Pennsylvania has said that a "*lis pendens* is not to establish actual liens upon the properties affected nor has it any application between the parties to the action themselves; all that it does is give notice to third persons that any interest they may acquire in the properties pending the litigation will be subject to the result of the action." *Dice v. Bender*, 117 A.2d 725 (Pa. 1955). So, a third party remains free to buy the property subject to the litigation. If the third party, after reviewing the pending lawsuit, is convinced that a would-be seller will prevail, the third party may purchase the land and take whatever title the seller can legally convey – which may be nothing at all, an unencumbered fee simple, or anything in between. The *lis pendens* merely gives notice that, whatever

---

[10] *See, e.g., Philadelphia Waterfront Partners, L.P. v. Churchill Development Group, LLC*, 2007 Phila. Ct. Com. Pl. LEXIS 175 (C.C.P. Philadelphia 2007); *and Patriots Corp. (USA) v. Ord*, 2008 Pa. Dist. & Cnty. Dec. LEXIS 177 at 6 (C.C.P. Westmoreland 2008) (relying, in part, upon the erroneous standard from *Philadelphia Waterfront* to review a *lis pendens* notice).

that title may be, remains in question. Thus, the third party cannot, later on, claim lack of knowledge of the suit.

To determine whether a *lis pendens* notice should be stricken from the judgment indices, our appellate courts have developed a two-part test. Just last year, this Court made clear that step one "is to ascertain whether title is at issue in the pending litigation." *In re: Foremost Industries, Inc. v. GLD*, 156 A.3d 318, 322 (Pa. Super. 2017). If this first prong is satisfied, the analysis proceeds to a second step where:

> the [trial] court must balance the equities to determine whether (1) the application of the doctrine is harsh or arbitrary and (2) whether the cancellation of the *lis pendens* would result in prejudice to the non-petitioning party.

*Id.* at 322-323 (quoting *Rosen v. Rittenhouse Towers*, 482 A.2d 1113, 1116 (Pa. Super. 1984).

In *Foremost Industries*, we reversed a trial judge's refusal to strike a *lis pendens* at the first step of the test. There, a *lis pendens* was filed against a piece of real estate known as "Greencastle" in relation to a federal suit. In that lawsuit, however, the plaintiff only alleged breach of contract, fraud, and unjust enrichment. Thus, who owned Greencastle was not before the federal court. This Court found that the plaintiff never truly claimed that he was the "rightful owner of Greencastle," nor did "he seek the return of real estate assets transferred pursuant to the [contract]." *Id.* at 323. We explained that:

> [i]mportantly, [the plaintiff] does not dispute that GLD now owns Foremost Industries' rights, titles, and interests. Rather, [the plaintiff] contends that GLD failed to pay a substantial portion of the contract price . . . The outcome of the underlying contractual dispute will not affect who has title to Greencastle. Rather, [the plaintiff] demands money damages.

*Id.* at 323–24. Under such facts, a *lis pendens* was inappropriate, because the federal lawsuit did not involve title to Greencastle.

Here, by contrast, the exact opposite is true. Mr. Barak's complaint is solely a quiet title action, and he seeks a determination of who owns the Wilkinsburg property. In his complaint, he claims to be the rightful owner. Thus, unlike the underlying litigation in **Foremost Industries**, Mr. Barak's cause of action touches and concerns title to the property against which he filed his *lis pendens*. Title is clearly the issue that Mr. Barak sought to litigate by suing Mr. Karolizki and Mr. Schwartz.

Moreover, when the trial judge accepted defense counsel's suggestion to allow a sale to go forward and then place the proceeds into escrow, the judge mistakenly ignored Mr. Barak's prayer for relief. The trial judge asked why Mr. Barak would not agree to the defendants' proposal of "escrow." N.T., 10/26/17 at 21. He could not accept the proposed escrow solution, because monetary damages would be incongruous with the allegations in his complaint. The defendants' escrow idea impermissibly converted Mr. Barak's quiet title action for ownership into a breach of contract action for damages.

Hence, the portion of the trial judge's order ordering the creation of an escrow account violated the common law of property and the common law of

contracts, because there was (and is) no contract at bar. Unlike **Foremost Industries**, where the plaintiff sought damages for a breach of a sales agreement, here, according to the complaint, Mr. Barak had no sales agreement with Mr. Karolizki and Mr. Schwartz. His sales agreement was with Mr. Alon Rimoni.[11]  **See** Barak's Second Amended Complaint at 1-2.

Thus, any action for a breach of contract must be litigated between Mr. Barak and Mr. Rimoni, not the parties of this case. It is legally impossible for Mr. Barak to maintain a breach of contract action against Mr. Karolizki and Mr. Schwartz, because the three of them never signed a contract. As such, the escrow solution and the judge's insistence that Mr. Barak "gets the money," if he wins, forced upon Mr. Barak an inappropriate remedy for a quiet title action. N.T., 10/26/17, at 36.

We therefore conclude that, because Mr. Barak's prayer for relief is for title, his prayer, if granted will directly and immediately implicate who holds title to the Wilkinsburg property. Against that property, the Allegheny County Department of Court Records indexed his *lis pendens*. Thus, our application of the first step of the *lis pendens* test dictates that Mr. Barak's

---

[11] Because the issue is not before us, we express no opinion as to whether Mr. Barak's quiet title action could have survived a demurrer or will survive summary judgment. We note, however, that "it is well-established law here that when the Agreement of Sale is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion. The vendor retains merely a security interest for the payment of the unpaid purchase money." **DiDonato v. Reliance Standard Life Insurance Co.**, 249 A.2d 327, 329 (Pa. 1969).

*lis pendens* **may be** indexed under the first part of the two-part test, as a matter of law.

But that only resolves one half of this case. Under the second part of the *lis pendens* test, a trial judge must decide if such a notice **should be** maintained, as a matter of equity. A trial judge must ascertain, in the first instance, "whether (1) the application of the doctrine is harsh or arbitrary and (2) whether the cancellation of the *lis pendens* would result in prejudice" to Mr. Barak. ***Rosen***, ***supra***, at 1116. Because the trial court applied the wrong legal test, that step-two determination has not yet occurred.

When trial judges, sitting in equity, apply the correct law, appellate judges must narrowly and deferentially review their decrees. The Supreme Court of Pennsylvania has held that:

> appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited, and [the decree] will not be disturbed unless it is unsupported by the evidence or demonstrably capricious.

***Sack v. Feinman***, 413 A.2d 159, 1066 (Pa. 1980).

Given that our review of a step-two decree is so highly deferential, and given that a "chancellor" has not yet considered the two questions posed in ***Rosen***, ***supra***, at 1116, principles of judicial restraint command that we halt our appellate review. We cannot deferentially review equitable decrees that a "chancellor" has not yet rendered. Indeed, if we were to reach step-two on this record, we would not be reviewing anything at all. In other words, if

we were to balance the equities ourselves, we would usurp the court of common pleas' "unlimited original jurisdiction." 42 Pa.C.S.A. § 931. This we may not do. *See* 42 Pa.C.S.A. § 741 (establishing the nearly nonexistent original jurisdiction of the Superior Court of Pennsylvania; limited to some writs of mandamus and prohibition and the Great Writ of *habeas corpus*).

## IV. Conclusion

We must remand this case to the Court of Common Pleas of Allegheny County to apply step two of *lis pendens* test to the record as it currently stands, in its original jurisdiction. However, no supplemental hearing or oral argument shall occur on this issue. The trial judge may exercise discretion on whether to allow briefs or memorandums of law on the question.

Order striking *lis pendens* vacated; case remanded with instructions; jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/18/2018