J-A15002-22

2022 PA Super 176

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
:
:
v. :
:
:
:
FERDINAND FITZGERALD : No. 644 WDA 2021

Appeal from the Order Entered May 6, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0005078-2020

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

OPINION BY BOWES, J.:                    **FILED:  October 13, 2022**

The Commonwealth of Pennsylvania ("Commonwealth") appeals from the May 6, 2021 order dismissing the charges against Ferdinand Fitzgerald ("Appellee").  After careful review, we reverse and remand for further proceedings.

On May 2, 2020, Pittsburgh Police Officer Tyler Newman reported to a 911 call at 5707 East Liberty Boulevard.  Officer Newman immediately encountered the 911 caller, Cheryl Bryant ("Victim"), who indicated that her boyfriend, Appellee, had been threatening to kill her while physically assaulting her with his hands, a tabletop, a vacuum cleaner, and a knife over multiple hours.  Officer Newman observed that Victim had injuries consistent with a physical assault.  Still photographs depicting the injuries to her face, neck, and collarbone were preserved from Officer Newman's body camera.

Victim explained that she had escaped the house when Appellee went to the bathroom. Earlier in the day, Appellee had taken her car keys and cell phone. Victim ran to a neighbor's house to call 911, where she waited until officers arrived. Based on Victim's description, Pittsburgh police officers were able to locate Appellee in the East Liberty area of Pittsburgh. Appellee appeared to be heavily intoxicated and a search incident to arrest led to the discovery of Victim's keys. Victim's cell phone was never located.

Appellee was arrested and charged with two counts of simple assault and one count each of terroristic threats and strangulation. The case was scheduled for a preliminary hearing, at which Victim was present, but Appellee waived the aforementioned charges to criminal court. **See** Withdrawal/Amendment Form, 7/7/22, at 1.

After two Commonwealth continuances due to an inability to reach Victim, on May 6, 2021, Appellee appeared for a non-jury trial. The Commonwealth immediately indicated that Victim still could not be located. **See** N.T. Non-Jury Trial, 6/6/21, at 2. However, rather than *nolle prosse* the charges, the Commonwealth sought to proceed without her testimony. **Id**. In response, Appellee made an oral motion *in limine* to dismiss the charges. **See** N.T. Non-Jury Trial, 5/6/21, at 2-3. Defense counsel argued that he had not had an opportunity to cross-examine Victim at the preliminary hearing, therefore, "any trial that would happen in the absence of the victim using hearsay statements of any kind would be a violation of [Appellee's]

- 2 -

[C]onfrontation [C]lause rights." *Id*. at 3. The Commonwealth disagreed and requested to make an offer of proof, contending that it did not intend to introduce any evidence that would violate the Confrontation Clause. *Id*. at 3. The trial court allowed the Commonwealth to make the following proffer:

> The Commonwealth intends on entering and playing the 911 call in this case, which would not be a violation of the [C]onfrontation [C]lause as it is made in an emergency situation to non-police personnel.
>
> The Commonwealth also intends on offering photographs, still photographs from the officers' body cameras and officer observations on scene. At no point does the Commonwealth intend on offering any statements through the police officers. So there would not be a violation of the . . . [C]onfrontation [C]lause.
>
> There is a portion of the body camera the Commonwealth intends to play that documents the interaction between the victim and the EMS that arrives. Again, that is separate and distinct from the police officers, and we would not be seeking to enter any hearsay statements from those police officers.

*Id*. at 4. In response, defense counsel renewed his objection that use of the body camera footage and 911 call violated the Confrontation Clause because Victim was not available for cross-examination about the cause of her injuries. *Id*. at 4-5.

After hearing the foregoing proffer, the trial court abruptly ended the hearing, stating: "Ok. I've heard enough. I agree with [defense counsel]. I'm going to grant the motion. Case dismissed. Thank you." *Id*. at 5. The court concluded the hearing without listening to the 911 call, viewing the body camera footage, or allowing the Commonwealth to present testimony from Officer Newman.

On May 21, 2021, the Commonwealth filed a motion to reconsider, averring that the evidence cited in its offer of proof did not run afoul of the Confrontation Clause. Attached to the motion, the Commonwealth submitted the transcript of the 911 call, the transcript of the body camera video, and the still photographs. *See* Commonwealth's Motion to Reconsider, 5/21/21, at unnumbered 2-4. The Commonwealth contended that all the evidence it intended to admit was nontestimonial, qualified as an exception to hearsay, or constituted a personal observation by the officer on scene. *Id*. Accordingly, the Commonwealth requested the opportunity to present the evidence at trial. *Id*. Appellee submitted an answer, contending that all the evidence was testimonial in nature and therefore inadmissible absent testimony from the Victim. *See* Answer, 5/25/21, at unnumbered 4. The next day, the trial court entered an order denying the Commonwealth's motion to reconsider. This timely appeal followed.[1] Both the Commonwealth and the trial court have complied with the mandates of Pa.R.A.P. 1925.

The Commonwealth raises the following issue for our review: "Whether the trial court erred in granting the appellee's oral motion to dismiss his domestic-abuse case on the grounds that the Commonwealth's intention to

---

[1] In this Court, Appellee filed a motion to quash the instant appeal. Therein, Appellee argued that the trial court's ruling was interlocutory rather than a final order from which the Commonwealth was permitted to appeal. The Commonwealth filed a response and this Court denied the motion without prejudice for Appellee to present the arguments to the panel assigned to address the merits of the appeal.

proceed with trial in the absence of [Victim] was a violation of the Confrontation Clause?" Commonwealth's brief at 4.

Preliminarily, we consider Appellee's argument that this appeal must be quashed. *See* Appellee's brief at 10. Appellee contends that the appeal should be quashed because the Commonwealth appealed from an interlocutory order. *Id*. at 11.

It is well-settled that the Commonwealth may only appeal from a final order issued by the trial court. *See Commonwealth v. Waller*, 682 A.2d 1292, 1294 (Pa.Super. 1996) (*en banc*). "An order is final, and not interlocutory, if it prevents a party from presenting the merits of its claim in the trial court." *Barak v. Karolizki*, 196 A.3d 208, 215 (Pa.Super. 2018). Accordingly, "if the defect which precipitated the dismissal may be cured by the Commonwealth, a subsequent appeal to this Court is considered interlocutory." *Id*. "On the other hand, if the defect which requires the dismissal of charges is incurable, then the order dismissing the charges is final, and appellate review is proper." *Id*.

Relying on *Waller* and *Commonwealth v. Jones*, 676 A.2d 251, 252 (Pa.Super. 1996), Appellee alleges that the order was not final because the trial court did not attach prejudice to the dismissal and the defect that prompted the trial court to dismiss the charges was "entirely curable." *Id*. at 18. However, the Commonwealth contends that Appellee's reliance on *Waller*

- 5 -

and **Jones** is misplaced. For the following reasons, we agree with the Commonwealth.

In **Waller**, the case was dismissed after the Commonwealth was denied a continuance request and admitted that it could not proceed without an absent witness. **Waller**, **supra** at 1294. We quashed the Commonwealth's appeal that followed as interlocutory, concluding that the trial court had dismissed the charges without prejudice to be refiled by the Commonwealth. **Id**. at 1294-95. Put another way, since the Commonwealth could cure the defect by refiling the complaint and producing the witness at the ensuing trial, the order was not final. **Id**. at 1295.

Similarly, in **Jones**, the trial court dismissed charges after multiple essential Commonwealth witness failed to appear and the Commonwealth stated that it was unable to proceed without them. Rather than appeal that ruling, the Commonwealth located the witnesses and refiled the criminal complaint. **Id**. at 252. Thereafter, the defendant filed a motion to quash on the grounds that refiling the charges was improper. The trial court granted the motion and the Commonwealth appealed. We reversed the quashal, finding that the Commonwealth properly refiled the complaint because the defect was curable. **Id**.

In contrast to **Waller** and **Jones**, where the absent witnesses were essential to the litigation, here, the Commonwealth did not contend that it was unable to proceed. Instead, the Commonwealth indicated that it intended to

try the case without Victim and the trial court denied the Commonwealth the opportunity to do so. Accordingly, it was the trial court that prevented the Commonwealth from presenting the merits of its case, not the absent Victim. Since this case involves a trial court dismissing a Commonwealth case, which was ready to proceed, thereby denying review on the merits, we find that the resulting ruling was final. Accordingly, we will not quash the appeal on these grounds. We now turn to the merits of the Commonwealth's substantive issue.

The Commonwealth contends that the trial court erred in excluding the substance of the 911 call and Victim's interaction with the paramedic as violative of the Confrontation Clause. **See** Commonwealth's brief at 16. Alternatively, the Commonwealth argues that the charges should not have been dismissed because of the adverse Confrontation Clause ruling. Instead, it asserts that the trial court should have permitted it to proceed to trial without that evidence. **Id**. We agree.

Whether a defendant has been denied his right to confront a witness is a question of law for which our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Brown**, 185 A.3d 316, 409 (Pa. 2018) (plurality). The Confrontation Clause of the Sixth Amendment prohibits out-of-court testimonial statements by a witness, even if they are otherwise admissible as an exception to the rule against hearsay, unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. **See Crawford v. Washington**, 541 U.S. 36 (2004).

In analyzing whether an out-of-court statement is testimonial, and, therefore, subject to the protections of the Confrontation Clause under **Crawford**, a court must review the statement itself in order to determine whether the primary purpose of the evidence was to establish or prove past events relevant to a later criminal prosecution. **See Commonwealth v. Williams**, 103 A.3d 354, 359 (Pa.Super. 2014).

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to [a] later criminal prosecution.

**Id**. (summarizing **Davis v. Washington**, 547 U.S. 813, 822 (2016)). For example, Pennsylvania courts have found that a child's statements in a forensic interview conducted as part of a criminal investigation were testimonial, while a victim's statements about fear of the defendant made to friends in a casual setting were not. **Compare In re N.C.**, 74 A.3d 271, 278 (Pa.Super. 2013), with **Commonwealth v. Kunkle**, 79 A.3d 1173, 1190 (Pa.Super. 2013).

Herein, it is uncontradicted that Victim was unavailable, and that Appellee did not have a prior opportunity to cross-examine her about the incident. Thus, the outcome of this appeal turns on the question of whether Victim's representations recorded in the 911 call and body camera footage

constituted testimonial statements. We consider each piece of evidence in turn.[2]

The 911 call

First, the Commonwealth argues that the trial court erred when it held that the Victim's statements during the 911 call were testimonial and, thus, inadmissible unless the Victim appeared to testify.

In **Davis**, a victim called 911 to report an ongoing domestic disturbance. When the victim reported that her assailant had fled the premises, the operator instructed the victim to stay on the line and answer questions until police arrived. **See Davis v. Washington**, **supra** at 818. A couple of minutes later, the police found the victim "shaken" and "frantic." **Id**. The victim did not testify at trial, but the trial court admitted the recording into evidence over the defendant's Confrontation Clause objection. **Id**. at 819. On appeal, the United States Supreme Court confirmed that the Confrontation Clause applied only to testimonial statements and considered whether the 911 call at issue contained any such utterances. Focusing on the circumstances

---

[2] We note that the trial court improperly determined the 911 call and body camera footage ran afoul of the Confrontation Clause without reviewing either piece of evidence. The trial court then compounded the error by offering scant explanation of its decision. Frustratingly, after having prevented the Commonwealth from developing a record to support its position, the trial court opined to this Court that the Commonwealth's failure to establish specific facts to demonstrate the nontestimonial nature of the statements necessitated dismissal. Fortunately, our review is not thwarted by trial court error since the Commonwealth ensured that the proffered evidence was included in the certified record and our standard of review in this context is *de novo*.

of the 911 call, the Court found that the operator's primary purpose, while interrogating the victim, was to enable police assistance to address "a bona fide physical threat." *Id*. at 827. Specifically, the Court noted that the caller was speaking about events as they were happening, the nature of the questions that were asked and answered were targeted at resolving the present emergency, and the informality of the conversation indicated that the victim remained in a potentially unsafe environment. *Id*. Based on its review, the Court concluded that the call did not contain testimonial statements, and thus, its admission did not violate the Confrontation Clause.

Instantly, as in *Davis*, the Commonwealth sought to admit an absent victim's hearsay statements through the transcript of a 911 phone call. At the beginning of the 911 phone call, Victim informed a 911 call operator that her boyfriend, Appellee, "had beat [her] up" and had "been threatening [her] with knives all day." *See* Transcript of 911 Call, 5/2/20, at 2, 6. While she had managed to escape to a neighbor's apartment, Appellee was currently "tearing [her] house apart." *Id*. at 2. Victim indicated that she was close enough to the scene that she could hear Appellee destroying her belongings. *Id*. at 2. Victim pleaded with the operator, "Can you please come soon?" *Id*. at 3. The operator indicated that help was on its way and asked Victim to continue providing basic identifying information for Appellee. *Id*. at 49. Throughout the conversation, Victim repeatedly described her face as "all balled up" and

stated that she was "shaking right now." *Id*. at 4, 9. The call concluded as soon as the officers arrived. *Id*. at 10.

While Victim had fled Appellee's physical assault prior to initiating the 911 call, an ongoing emergency remained as Victim remained close by, Appellee continued to destroy her residence, and law enforcement had not secured the scene. Furthermore, as in *Davis*, follow up questions by the operator focused on helping police assess the threat to their own safety and possible danger to Victim as they formulated a responsive plan to the emergency. Likewise, the informality of the 911 call, in which Victim indicated she was actively shaking and that her face was "all balled up," further evidenced the nontestimonial nature of Victim's statements. Therefore, we conclude that the 911 call was nontestimonial and the trial court erred by excluding it on these grounds. *Accord Williams*, *supra* at 362 (holding statements of victim during 911 call outside of the presence of the defendant, advising the authorities of the defendant's infliction of her injuries and his starting a fire before fleeing the house, to be non-testimonial).

<u>Body Camera Footage</u>

The Commonwealth also challenges the trial court's exclusion of statements that Victim made to the paramedic. *See* Commonwealth's brief at 23 n.11. Specifically, Victim engaged in the following conversation with the paramedic:

EMS MEDIC: Do you have any blurred vision? A little bit? Yeah.

[Victim]: I do use glasses, though.

EMS MEDIC: Okay. But even if you put your glasses on –

[Victim]: I don't know. I didn't – I haven't put them on. He might've broke them, too. I haven't even been back up – I haven't been up there since I called the police.

EMS MEDIC: Okay.

[VICTIM]: He probably tore my house apart. I heard him dropping things, and stuff like that. He got my phone. He got my money. I don't know what else he did. I didn't go up through there.

EMS MEDIC: Are you having any jaw pain?

[VICTIM]: Mm-mm, just headache and my neck is sore. I've got a sore throat.

EMS MEDIC: Okay.

[VICTIM]: But my head – and my head is hurting.

EMS MEDIC: Okay. Did you want to be seen in the hospital?

[VICTIM]: I really kind of don't. I wanted to just see if I can, like, put some ice and stuff on it.

EMS MEDIC: I want you to bite down for me. Does that hurt?

[VICTIM]: Mm-hmm, little bit.

EMS MEDIC: A little bit there. It doesn't feel like nothing's out of place?

[VICTIM]: That – that little bit right there. That's just – no, it's – just that – when you did that, my – my head started hurting.

EMS MEDIC:      Can you lift it up for me?  Get your head up. Can you put your chin down to your chest?

[VICTIM]:      That's hurting my throat.

EMS MEDIC:      Okay.

[VICTIM]:      Not back there.

OFC NEWMAN:      [Victim], your swollen eye and your bleeding lip here, how did you get that?  Did he hit you with something, or –

[VICTIM]:      He hit me with his hands.

OFC NEWMAN:      Okay.

EMS MEDIC:      Are you able to breathe out your nose?

[VICTIM]:      Mm-hmm.  You got any ice packs?

EMS MEDIC:      We can give you an ice pack.

[VICTIM]:      How long you think I'm going to be swollen for?

EMS MEDIC:      Couple of days, two or three days.

[VICTIM]:      Wow.

Commonwealth's Motion for Reconsideration Exhibit 5, Transcript of Body Camera Video, 5/2/20, at 1-5.

We find these statements to be akin to those held to be non-testimonial in *Williams*, *supra*.  In that case, the defendant stabbed his girlfriend with a screwdriver before pouring gasoline on her and setting her on fire.  *Id*. at 356. After the defendant fled, the victim was able to extricate herself from her burning home and call 911 from a neighbor's house.  The victim was transported to the hospital where she later succumbed to her injuries.  At trial,

- 13 -

the Commonwealth sought to introduce the victim's 911 call and statements she made to the paramedic on her way to the hospital. The defendant challenged the admission of both statements on Confrontation Clause grounds, arguing that the emergency had ended by the time the statements were made. *Id*. at 362. The trial court disagreed.

On appeal, we affirmed, finding that the defendant was construing the phrase "ongoing emergency," as used in *Davis* too narrowly. *Id*. Even though the defendant was no longer present, and the victim had retreated from the burning building before the statements were made, the surrounding circumstances reflected that an ongoing emergency remained. The victim's house was still burning, and she needed immediate medical attention. During the 911 call, the victim repeatedly and frantically pled for help while also providing information that the firefighters used to safely contain the fire. Furthermore, while victim's statements to the paramedic included additional details of a sexual assault not included in the 911 recordings, this information was provided in response to a simple "what happened" question posed by the paramedic. *Id*. at 363. This was not an interrogation whose intention was to generate evidence for a future prosecution. Instead, the paramedic needed to know "what happened" to understand quickly what kind of injuries to look for beyond what could be seen externally. *Id*. Accordingly, we construed both pieces of evidence as non-testimonial statements designed to assist the emergency personnel in responding to an emergency. *Id*.

Here, as in **Williams**, the conversation with the paramedic also occurred shortly after the crime had been committed and was tailored to discerning the extent of Victim's injuries so that the appropriate treatment could be provided. While Victim's conversation with the paramedic also included additional details of the assault that were not included in the 911 recordings, the paramedic's questioning did not elicit this information. Instead, while the paramedic inquired whether Victim had blurred vision, jaw pain, and whether she could breathe through her nose, the paramedic was trying to ascertain whether there was an ongoing medical emergency for which Victim needed to be transported to the hospital. Officer Newman's follow up question regarding what Victim was assaulted with was also aimed at assessing the extent of Victim's potential internal injuries, as they worked to quickly understand the extent of Victim's injuries. Accordingly, we find that Victim's statement to the paramedic was also nontestimonial and should not have been excluded on Confrontation Clause grounds.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

J-A15002-22

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/13/2022