J-A27022-20

2022 PA Super 69

| | | |
|---|---|---|
| FREDERICK E. OBERHOLZER, JR AND DENISE L. OBERHOLZER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SIMON AND TOBY GALAPO | : | |
| | : | No. 794 EDA 2020 |
| Appellants | : | |

Appeal from the Judgment Entered April 1, 2020
In the Court of Common Pleas of Montgomery County
Civil Division at No: No. 2016-11267

BEFORE: STABILE, J., NICHOLS, J., and COLINS, J.[*]

CONCURRING/DISSENTING OPINION BY STABILE, J.:

**FILED APRIL 18, 2022**

I concur fully with the Majority's able discussion and summary of applicable legal principles in its analysis of this case. I, however, respectfully dissent from the Majority's holding to vacate the trial court's judgment and amended injunction and to remand this case to the trial court with direction to reconsider its injunctive remedy because it applied an incorrect standard. I believe that to be unnecessary because the relief ordered by the trial court comports with the applicable standard governing content-neutral injunctions that have the effect of restricting speech.

As the Majority correctly notes, the Court in **Madsen v. Women's Health Center, Inc.**, 512 U.S. 753 (1994), recognized that the standard

_____

[*] Retired Senior Judge assigned to the Superior Court.

time, manner and place analysis for assessing the constitutionality of content-neutral *regulations* is not the appropriate test when assessing the constitutionality of a content-neutral *injunction*. The **Madsen** Court reasoned that a higher level of scrutiny is required when assessing injunctions (as opposed to ordinances) that affect content-neutral speech because injunctions carry greater risks of censorship and discrimination, since they are remedies imposed for violations (or threatened violations) of a legislative or judicial decree. **Id.** (citing **United States v. W.T. Grant Co.,** 345 U.S. 629, 632-633 (1953)). Therefore, because the standard time, place, and manner analysis is not sufficiently rigorous to assess the constitutionality of an injunction that affects content-neutral speech, the challenged provisions of such an injunction must be examined under the higher standard of whether the injunction burdens no more speech than necessary to serve a significant government interest. **Madsen**, **supra**.

To ascertain what limits, if any, may be placed on protected speech, the Court often has focused on the "place" of that speech, considering the nature of the forum the speaker seeks to employ. **Frisby v. Schultz,** 487 U.S. 474, 479 (1988). The Court's cases have recognized that the standards by which limitations on speech must be evaluated "differ depending on the character of the property at issue." **Id.** (citing **Perry Education Ass'n. v. Perry Local Educators' Ass'n.,** 460 U.S. 37, 44 (1983)). With respect to the home, it is well-established that the government has a significant interest in protecting

the privacy of a person's home. "The State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Frisby,* 487 U.S. at 484 (citing *Carey v. Brown*, 447 U.S. 455, 471 (1980)). One important aspect of residential privacy is protection of the unwilling listener. A special benefit of the privacy all citizens enjoy within their own walls, which the State may legislate to protect, is an ability to avoid intrusions. *Frisby,* 487 U.S. at 485.[1] Thus, the Court repeatedly has held that individuals are not required to welcome unwanted speech into their own homes, and that the government may protect this freedom. *Id.* In the present case, it is not disputed that the object of the trial court's injunction was to address Appellants' actions that were unlawfully interfering with Appellees' privacy interest in their home by the intentional targeting and intrusion of anti-hate and anti-racist messages into Appellees' home. Appellant's husband candidly admitted that the placement of the signs in the rear of their yard facing Appellees' home was meant to protest behavior which he perceived as being racist towards himself, his wife, and his family. The trial court took a very measured and narrow approach to fashioning its

---

[1] *Frisby* addressed the validity of a township *ordinance* that prohibited picketing before or about the residence or dwelling of any individual. Although the point has been made that a higher level of scrutiny is warranted when examining an injunction as opposed to an ordinance, it would seem *Frisby*'s recognition of the special protection afforded unwanted intrusions in one's home when examining an ordinance is more compelling in the context of examining the constitutionality of an injunction restricting speech.

injunction to protect Appellees' privacy interest in their home by ordering only that the signs be positioned so as not to face Appellees' property. When this initial directive proved ineffective because the messages nonetheless could be read through the back of the signs, the court entered an amended injunction (now on appeal) ordering that the sign material be opaque so that the messages could not be seen even when the signs were turned away from Appellees' home. The trial court did not ban or seek to modify any content of the offending signs. It did not limit the number of signs or the number of messages that could be posted. No restriction was placed on the time when the signs could be placed, the location of the signs upon Appellants' property, or who may see the signs other than Appellees. In sum, the only restraint the court imposed upon Appellants' personal protest against Appellees was to construct the signs of opaque material and to face the signs away from Appellees' home. In my opinion, the trial court took the most conservative approach to enjoining Appellants' conduct that burdened no more speech than necessary to serve a significant government interest to address the unwanted messaging targeted at Appellees that could be seen from within the privacy of their home. Upon review of the court's amended injunction, I cannot fathom a more narrowly tailored remedy under the more stringent standard not to burden speech any more than necessary than that ordered by the trial court. Under these circumstances, I would conclude that the trial court's improper reliance upon a time, place and manner standard to fashion its injunctive

remedy was harmless error not warranting a remand. I, therefore, disagree with that part of the Majority's decision to vacate the trial court's judgment and injunction so that the remedy ordered may be examined under the stricter standard of **Madsen**. It is my opinion that standard already has been met.

I find the cases cited by the Majority, whereby it feels it has no choice but to order a remand, to be distinguishable from the present matter. **See** Majority Opinion at 51, n.24 ("[w]hen a trial court has applied an incorrect legal standard, we should vacate and remand."). While I cannot quibble with the general proposition that a remand ordinarily is in order when an incorrect legal standard is employed, I do not find a remand necessary where the error here is harmless, since the injunctive remedy ordered by the trial court comports with the **Madsen** standard. Nowhere in the cases cited by the Majority do I find a mandate for remand where the error is harmless. In fact, in the lone Pennsylvania Supreme Court case cited by the Majority, **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), discussed more fully, *infra,* it was the Court's statement that when "a reviewing court applies the incorrect legal standard, our court **generally** will remand the matter with appropriate directions." **Id.** at 1057 (emphasis added). This statement does not compel a remand every time an error is made in the standard employed.

In the first of two Superior Court cases cited by the Majority, **In re M.B.**, 228 A.3d 555 (Pa. Super. 2020), the trial court expunged the record of M.B.'s Section 302 commitment. In its accompanying opinion, the trial court

explained that the PSP "bore the burden of establishing *via* clear and convincing evidence that M.B.'s commitment was sufficient and complied with the Mental Health Procedures Act." This statement of the law was incorrect, since the trial court erroneously held PSP to a higher standard of proof than the law mandates. This Court therefore vacated the portion of the trial court's order that expunged the record of M.B.'s Section 302 commitment. Upon remand, with the correct standard employed, it was possible the PSP could prevail, thus the error was not harmless.

In **Barak v. Karolizki**, 196 A.3d 208, 222 (Pa. Super. 2018), wherein a *lis pendens* was filed against a piece of real estate, the trial court applied the wrong legal test — namely, the standard for a preliminary injunction — and ordered the court clerks to remove the *lis pendens* from their judgment index. To properly determine whether a *lis pendens* notice should be stricken from judgment indices, we noted our appellate courts have developed a two-part test; step one is to ascertain whether title is at issue in the pending litigation. **Id.** (citing **In re: Foremost Industries, Inc. v. GLD**, 156 A.3d 318, 322 (Pa. Super. 2017)). If this first prong is satisfied, the analysis proceeds to a second step where the trial court must balance the equities to determine whether (1) the application of the doctrine is harsh or arbitrary and (2) whether the cancellation of the *lis pendens* would result in prejudice to the non-petitioning party. **Id.** We remanded for the trial court to apply step two of the *lis pendens* test having found that the first step already was satisfied.

It is obvious that when comparing the erroneous standard used by the trial court with the correct standard that a wholly different result could be reached. The error was not harmless.

In **Clay**, **supra**, our Supreme Court considered whether this Court applied an incorrect standard of review with respect to a claim that the verdict was against the weight of the evidence. This Court had held the trial court's decision was an abuse of discretion and vacated Appellees' convictions. The Supreme Court concluded that we abused our discretion by employing an incorrect standard of review by erroneously substituting our own conclusions for those of the jury and the trial court. The Court observed that it was evident from the Superior Court's opinion that the decision was not based on a determination that the trial court exceeded its limits of judicial discretion or invaded the province of the jury. This Court simply disagreed with the jury's verdict and improperly substituted its own conclusions therefor. Accordingly, the Supreme Court reversed and ordered a remand for reconsideration under the proper standard. The error by this Court was not harmless. The trial court's exercise of discretion in determining whether the evidence was against the weight of the evidence, although different from how this Court may view the evidence, could very

well be affirmed as within the trial court's discretion upon remand. The error was not harmless.[2]

On the other hand, our Supreme Court has on at least one occasion declined to order a remand where the wrong legal standard was applied, opting instead to address the error itself. In **Commonwealth v. Widmer**, 744 A.2d 745 (Pa. 2000), the Supreme Court concluded that this Court improperly merged the standard of review for a weight of the evidence claim with the standard of review for a sufficiency of the evidence claim. Given this error, the Supreme Court could not then accept this Court's assessment of the trial court's exercise of discretion. In fashioning a remedy to address this error, the Supreme Court held

> Normally where the reviewing court applies the incorrect legal standard our court will remand the matter with appropriate directions. However, given the fact that the parties in this case have already been through the appellate process twice, in the interest of justice we will review the question of whether the trial court abused its discretion in awarding a new trial on the grounds that the verdict was against the weight of the evidence.

*Id.* at 752-753. Similarly, here the parties have expended great time and energy litigating this dispute between them with the trial court issuing an injunction and an amended injunction. The material facts are not in dispute.

---

[2] For sake of brevity, I do not review individually the federal cases cited by the Majority, which are only persuasive authority to this Court, as I find them similarly distinguishable.

Review of the amended injunction under the correct standard is as a matter of law. A more narrow injunction cannot be fashioned that would burden speech more than necessary to address Appellants' unwanted intrusion of messaging into the Appellees' home. In the interests of justice, I believe we too may review the scope of the amended injunction to decide as a matter of law whether the limited injunction granted by the trial court comports with the **_Madsen_** standard.

I previously stated my belief that while the trial court improperly looked to a time, manner and place analysis in coming to the injunctive relief it ordered, the relief nonetheless burdened no more speech than necessary to serve the significant government interest in protecting the privacy of the Appellees' home. As such, I do not believe a remand is necessary to come to the same conclusion and therefore, any error in the standard used was harmless. I therefore respectfully dissent from that part of the Majority's decision to vacate the judgment and amended injunction in order to remand this matter for a determination under the **_Madsen_** standard.